STATE of Missouri, Respondent,

v.

Gary Lynn BAKER, Appellant.

No. SC 84507.

Supreme Court of Missouri,
En Banc.

April 1, 2003.

Rehearing Denied May 27, 2003.

Donald W. Petty, Liberty, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Karen L. Kramer, Assistant Attorney General, Jefferson City, for respondent.

STEPHEN N. LIMBAUGH, JR., Chief Justice.

A jury convicted appellant Gary Lynn Baker of the class C felony of "creation of

a controlled substance," in violation of section 195.420, RSMo 2000. After appeal to the Court of Appeals, Southern District, this Court granted transfer, Mo. Const., art. V, sec. 10, to determine whether stating "no objection" at trial invalidates a previously entered continuing objection. The judgment is affirmed.

## I. Facts

Appellant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, *State v. Werner*, 9 S.W.3d 590, 593 (Mo. banc 2000), the relevant facts are as follows:

On March 10, 2000, employees at the Golden Valley Country Market Store in Clinton, Missouri, informed police that appellant had purchased a large quantity of matchbooks. The striker plates on matchbooks are a source of red phosphorous, a substance needed to produce methamphetamine. Police had previously learned that within the past year, appellant had also purchased a sizable amount of pseudoephedrine and iodine crystals, both precursor ingredients of methamphetamine.

Relying upon this information, as well as statements from witnesses that had seen appellant manufacturing methamphetamine, Sergeant James Wingo, a narcotics investigator with the highway patrol division of drug and crime control, requested and was granted a warrant to search appellant's residence. To execute the search warrant, Sergeant Wingo enlisted the help of a special emergency response (SER) team. The SER team was to secure the premises, while Sergeant Wingo and other local law enforcement officers conducted the actual search. At the hearing on appellant's motion to suppress the admission of evidence discovered during the search, Sergeant Wingo testified that he employed the services of the SER team because they were specially trained to enter hostile environments, and he had reason to believe that appellant, whom the officers knew to be present at the residence, posed a serious threat of violence.

The warrant was executed at ten o'clock in the evening, after extensive briefing of the SER team. The building to be searched was a former restaurant, which had been partially converted into a residence. It had numerous doors and was located in a secluded area. Captain Bruce Houston, a member of the SER team, testified at trial that he attempted to gain entry to the residence by using a battering ram against one of the steel doors. When this failed, he broke a window and released the front door lock, letting the remaining team members inside. After searching both floors of the residence, the SER team found two individuals. They did not, however, find the appellant.

The team suspected that appellant was hiding in a cubbyhole upstairs. Rather than enter the hiding place and risk that appellant was armed, the team attempted to determine whether appellant was present by throwing a lighting device into the hole. In response, appellant called out, "Okay, okay, I'm here." The officers eventually convinced appellant to surrender.

Once the SER team secured the premises, local law enforcement officials commenced the search. The officers discovered numerous ingredients and pieces of equipment used in making methamphetamine, including pseudoephedrine, hydrogen peroxide, lye, methanol, naphtha, match strike plates, sulphuric acid, muriatic acid, iodine, acetone, ephedrine, lighter fluid, an electric skillet, a hot plate, filters, and funnels. The officers also found a shotgun, rifle and pistol ammunition, and bows and arrows.

Based on the evidence discovered during the search, appellant was arrested and

charged with creation of a controlled substance in violation of section 195.420. In the preparation of his defense, appellant filed a motion to suppress the admission of the above items, alleging, *inter alia*, that the warrant was illegally executed by law enforcement officers in violation of appellant's Fourth Amendment rights. At a hearing on the motion, Officer Wingo offered the following testimony regarding the execution of the search warrant:

> Defense Counsel: Did you have any particular fear of any type of bodily harm when you were executing the search warrant?
>
> Wingo: Yes.
>
> Defense Counsel: What was that fear?
>
> Wingo: It's—basically stems from Mr. Baker's violent, erratic, paranoid behavior that had been exhibited through contacts with him in the past through law enforcement and by myself.
>
> . . . .
>
> Defense Counsel: You're not aware of him ever being arrested for any kind of assault on a police officer or anybody, have you?
>
> Wingo: Ah, I think he's exhibited, brandished weapons to citizens. As far as assaults on police officers itself? I don't—I don't recall right now.
>
> . . . .
>
> Defense Counsel: Okay. Ah, there was no independent knowledge from you that Gary Baker would actually, in fact, use a gun against you or any other officer attempting to conduct a search warrant, was there?
>
> Wingo: I—I—it wouldn't have surprised me in the least that he would, no.
>
> Defense Counsel: Well, I guess what I'm saying is, is that perhaps maybe it wouldn't surprise you. But I mean, was there any particular indication there on March 10th of 2000 that the defendant

might, would use a gun against you if conducting a search warrant of the premises?

> Wingo: Mr. Baker has a history—and maybe I wasn't clear before, but I'll try and be a bit clearer now. That not only speaking with other officers, but through personal experience, Mr. Baker has a paranoid type of behavior that's rather odd. Ah, and he does the oddest things, I will tell you that.

The trial court overruled appellant's motion. Immediately prior to trial, appellant renewed his motion to suppress, for the first time specifically arguing that the warrant was improperly executed because the SER team failed to knock and announce their presence before entering the premises. The trial court once again denied appellant's motion. In its "Supplemental Finding on Defendant's Motion to Suppress Evidence," the court found that "the Highway Patrol's past dealing with Defendant, . . . the paranoid state Defendant was known to be in at the time of obtaining the search warrant, [and SER team Captain] Bruce Houston's information that Defendant was armed and dangerous" justified the no-knock entry.

At trial, the prosecutor referred to the property seized pursuant to the search warrant during opening arguments. Appellant then requested and was granted a continuing objection to the admission of all evidence discovered during the allegedly improper search. However, when the prosecutor offered the evidence for admission, defense counsel, on his own initiative, announced that he had no objection to the introduction of all the seized evidence.

At the close of evidence, instructions, and argument by counsel, the jury found appellant guilty of possession of a chemical with the intent to create a controlled substance. After determining that appellant was a prior and persistent offender,

the trial court imposed a twenty-year sentence. Appellant now renews his challenge to the admission of the seized evidence, claiming that his continuing objection properly preserved this issue for appeal. Appellant also argues that there was no probable cause to issue the search warrant, that the information filed by the state did not sufficiently charge the offense of creation of a controlled substance, and that the state's verdict director violated his double jeopardy rights and his right to a unanimous verdict. Finding no reversible error, this Court affirms.

## II. The Motion to Suppress Evidence

In his first point, appellant alleges that the trial court erred in overruling his motion to suppress, because the search warrant was illegally executed and the issuance of the search warrant was not supported by probable cause. Specifically, appellant contends that law enforcement officials unjustifiably failed to knock and announce their presence before entering the residence, and that the affidavit underlying the search warrant was based on uncorroborated hearsay, reports from unreliable informants, and information that was so temporally remote that it lacked any probative value. In response, the state argues that this issue was not properly preserved for review because appellant affirmatively waived any objection to the admission of the seized evidence by stating at trial that he had no objection to the admission.

Missouri courts have consistently held that stating "no objection" when evidence is introduced precludes direct appellate review of the admission. *See, e.g., State v. Starr*, 492 S.W.2d 795, 801 (Mo. banc 1973). However, in this case, and unlike *Starr*, appellant had requested and received a continuing objection to the admis-

sion of the evidence in question before announcing that he had no objection when the evidence was introduced at trial. When presented with virtually identical scenarios, the Court of Appeals has chosen to review the denial of a motion to suppress on its merits, *State v. Stillman*, 938 S.W.2d 287, 290 (Mo.App.1997); *State v. Curtis*, 931 S.W.2d 493, 495 (Mo.App.1996), noting that "to now rule a waiver of this point and a denial of review would be a hypertechnical application of the requirement of renewing the objection at every stage." *Stillman*, 938 S.W.2d at 290. Nonetheless, the state contends that appellant affirmatively waived any appellate review.

■ The Court is mindful of the firmly-established rule that counsel is obligated to make specific objections at trial. *See State v. Roller*, 31 S.W.3d 152, 157 (Mo. App.2000); *State v. Slankard*, 74 S.W.3d 271, 274 (Mo.App.1999). The reason for this rule is obvious: "The intent is that both the trial court and the appellate court may know specifically what the objections are, and that the appellate court may know that they have been presented to the trial court." *Ayres v. Keith*, 355 S.W.2d 914, 917 (Mo.1962).

■ Appellant's contradictory statements regarding the admission of the seized evidence would seem to lead to the precise uncertainties the rule was designed to prevent. However, in this case, the concern underlying the rule is not implicated—the record indicates that neither the prosecutor nor the trial court misunderstood appellant's statement at trial, as evidenced by the fact that the trial court considered appellant's claim regarding the admission of the evidence when ruling on appellant's motion for new trial, and the prosecutor did not object to the inclusion of that claim in the motion. In effect, appellant was stating that he had no objec-

tion other than the continuing objection. Consistent with *Stillman* and *Curtis*, where, as here, it was mutually understood that appellant did not intend to repudiate his prior objection, this Court will likewise acknowledge its continued validity. *State v. Martin*, 79 S.W.3d 912, 915 (Mo.App. 2002) (choosing to review denial of motion to suppress evidence, which trial court had ordered taken with the case, even though counsel had stated "no objection" when the evidence was admitted at trial, because both trial court and opposing counsel understood that appellant did not intend to waive issue contained in the motion); *State v. Dudley*, 912 S.W.2d 525, 527 (Mo.App. 1995) (holding that, because "the trial court understood the nature of the objection," an otherwise inadequate objection was sufficient to preserve the issue for appellate review); *Estate of Gross v. Gross*, 840 S.W.2d 253, 260 (Mo.App.1992) (determining that failure to enter a specific objection at trial did not constitute a waiver of any claim of error, where the trial court, having heard argument on pre-trial motion *in limine*, clearly understood the basis of the re-submitted objection at trial).

Although under the facts of this case, appellant's statement at trial did not vitiate his previously entered continuing objection, this Court is cognizant of the potential for manipulation created by permitting counsel to object to evidence, while indicating otherwise before the jury. Arguably, by stating "no objection" when evidence is admitted, counsel is able to give the jury the impression that the evidence in question is uncontroverted, or simply of little import, despite his previous opposition. Under certain circumstances, this ability to mislead the jury may have tactical advantages, as counsel is allowed both to secure appellate review of the opposed evidence and to gain the potential bene-

fit obtained by appearing non-confrontational and forthright before the jury. *See State v. Tokar*, 918 S.W.2d 753, 768 (Mo. banc 1996) (recognizing that seasoned trial counsel often will not enter objections for strategic purposes, because "it is feared that frequent objections irritate the jury and highlight the statements complained of"). Nonetheless, this concern is slight where, as here, the prosecutor apparently saw no need to ask for a clarification of the objection. On the other hand, had the prosecutor perceived that defense counsel was seeking an unfair advantage, he could have insisted that defense counsel clarify that the repeated statements of "no objection" really meant "no other objection."

Having determined that, under the circumstances presented in this case, the announcement of "no objection" did not constitute an affirmative waiver of appellate review, the merits of appellant's claims are now addressed.

**A. The Execution of the Search Warrant**

Appellant's first claim concerns the manner in which law enforcement officials executed the search warrant. He argues that the trial court erred in overruling his motion to suppress because the executing officers failed to properly follow the "knock and announce" procedure mandated by article I, section 15, of the Missouri Constitution and the Fourth Amendment to the Unites States Constitution.

■ The Fourth Amendment to the Constitution, which affords the same guarantees against unreasonable search and seizures as article I, section 15 of the Missouri Constitution, *State v. Damask*, 936 S.W.2d 565, 570 (Mo. banc 1996), protects "[t]he right of people to be secure in their persons, houses, papers, and effects

against unreasonable searches and seizures ..." U.S. Const. amend. IV. The Supreme Court has held that this right includes the right to be notified by law enforcement officials of their purpose and authority prior to entering a dwelling. *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). This right, however, is far from absolute. Although the Supreme Court has incorporated the common law "knock and announce" principle into Fourth Amendment jurisprudence, and acknowledged that the failure to comply with the knock and announce requirement may render an otherwise valid search and seizure invalid, the Court also has recognized that non-compliance will not inevitably offend the Constitution. *Id.* Where exigent circumstances exist, legitimate law enforcement interests may outweigh an individual's right to be notified prior to police entry. *Id.* at 936, 115 S.Ct. 1914.

Given the myriad of possible factual scenarios faced by police when executing search warrants, the Supreme Court has been unable to define with precision the exact exigencies that will overcome the Fourth Amendment knock and announcement guarantee. The Court has made it clear, however, that in the face of a threat of violence or a likelihood that evidence will be destroyed, law enforcement officials are justified in dispensing with the knock and announce requirement. *Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997).

■ With this guidance in mind, it must be determined whether the facts and circumstances surrounding this particular entry warranted the caution exhibited by the police. If it is determined that the officers in this case had a "reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence," the Court is obliged to uphold the constitutionality of the officers' actions. *Id.* Although not a high standard of proof, this "reasonable suspicion" standard strikes the appropriate balance between the individual privacy interests affected by a no-knock entry and countervailing law enforcement concerns. *Id.*

Several aspects of the search, as well as testimony of law enforcement officials, support the trial court's finding that the SER team's failure to knock and announce prior to entry was a justifiable reaction to exigent circumstances. As noted, during the suppression hearing, Sergeant Wingo testified that the SER team had been called in to execute the warrant because officers believed the entry would involve a serious risk of danger. Wingo stated that, based on prior experiences with appellant, he believed appellant had violent propensities, describing him as "violent, erratic, [and] paranoid." He further testified that he had reason to believe appellant owned weapons, and that at the time police executed the warrant, appellant was present in the residence. Officer Houston, captain of the SER team, concurred with Wingo's assessment, testifying at trial that team members were worried about possible gunfire coming from the residence. The warrant was served at night, in a building that had many doors and could have easily facilitated an attempted escape if appellant had been notified prior to entry. Furthermore, methamphetamine, as well as many other substances for which the search warrant was issued, could have been readily discarded in a brief amount of time.

■ In view of this evidence this Court concludes that the officers had "reasonable suspicion" that knocking and announcing their presence would be dangerous or fu-

tile, or that it would lead to the destruction of evidence and, therefore, they were justified in failing to knock and announce their presence before entering appellant's residence. *See United States v. Ramirez*, 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998) (finding that where defendant, who police suspected was inside the residence at the time the warrant was executed, had a violent past, reportedly had access to weapons, and had vowed "not to do federal time," police failure to knock and announce prior to entry was justified by exigent circumstances). *See also State v. Hamilton*, 8 S.W.3d 132, 136 (Mo.App.1999) (information that defendant owned a handgun, and had an extensive criminal history deemed sufficient to support a reasonable suspicion that the execution of the search warrant might involve a risk of physical danger); *State v. Ricketts*, 981 S.W.2d 657, 662 (Mo.App.1998) (noting that a defendant's presence in the building at the time the search warrant is executed "might be a reasonable justification for forced entry if the police had a specific reason to believe that [defendant] was violent or had firearms on the premises ...". This point is denied.

### B. Probable Cause to Issue the Warrant

Appellant next challenges the validity of the search on another front, asserting that there was no probable cause to issue the search warrant because the supporting affidavit contained uncorroborated hearsay and described incidents that occurred so remotely in time that they could not support a finding of probable cause. In the affidavit at issue, Sergeant Wingo averred as follows: 1) employees of the Family Center Store in Harrisville, Missouri, reported that, on January 16, 1999, appellant purchased eight ounces of iodine crystals, claiming that he intended to use the crystals to treat his horses; 2) Missouri State Highway Patrol Sergeant Pat Shay informed Wingo that he had been receiving information that appellant was involved with the manufacture of methamphetamine, and that he did not believe appellant owned any horses; 3) on March 4, 1999, employees of the Clinton, Missouri, Wal–Mart informed West Central Drug Task Force Officer Amy Huber that appellant had recently purchased six boxes of pseudoephedrine; 4) Huber and Shay questioned appellant about the purchase, and appellant claimed that he had purchased the pseudoephedrine pills due to a serious sinus problem, and had left the pills at a friends house, although he was unable to remember the friend's name or the location of the residence; 5) Shay and Huber later developed information that appellant had left the pills at the residence of Sarah Brewer, which, on March 4, 1999, was found to contain a non-operational methamphetamine laboratory; 6) Brewer informed Huber that appellant was in the process of learning how to manufacture methamphetamine; 7) in July of 1999, Samantha J. Chappell, appellant's ex-girlfriend, informed Huber that she had observed appellant manufacturing methamphetamine at his residence, and that she had been purchasing chemicals for appellant's use; 8) Wal–Mart employees in Clinton, Missouri, informed Huber that, between late January and mid-February of 2000, appellant frequently came to the store between the hours of 2:00 a.m. and 5:00 a.m. to purchase bottles of hydrogen peroxide, cans of acetone, and, on occasion, several boxes of pseudoephedrine; and 10) in March 2000, Clinton Police Chief Rob Hyder informed Huber that, according to reports from employees at the Golden Valley County Market Store in Clinton, Missouri, appellant had recently purchased twelve boxes of matches, each containing 250 books of matches. Based on the above informa-

tion, the judge determined there was probable cause to believe that appellant was engaged in the manufacture of methamphetamine and issued the warrant.

This Court gives "great deference on review to the initial judicial determination of probable cause made at the time of the issuance of the warrant and . . . reverse[s] only if that determination is clearly erroneous." *State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990). In determining whether circumstances set forth in an affidavit are sufficient to establish probable cause, the issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Laws*, 801 S.W.2d 68, 69 (Mo. banc 1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). This decision should be predicated upon the totality of the circumstances set forth in the affidavit. *Laws*, 801 S.W.2d at 69. Furthermore, the fact that these circumstances are attributable to hearsay will not, by itself, render an affidavit deficient. An affidavit that relies on hearsay is sufficient to support a finding of probable cause if there is a substantial basis for crediting the hearsay. *See, e.g., State v. Williams*, 9 S.W.3d 3, 14 (Mo.App.1999) (citing *State v. Hammett*, 784 S.W.2d 293, 297 (Mo.App.1989)).

When evaluating the creditability of hearsay reports contained in a supporting affidavit, the issuing judge must consider the " 'veracity' and 'basis of knowledge' of persons supplying hearsay information," *Laws*, 801 S.W.2d at 69, whether the hearsay reports were based on personal knowledge and whether the reports have been corroborated. *State v. Dawson*, 985 S.W.2d 941, 949–50 (Mo.App. 1999). Some hearsay reports, by virtue of

the identity of the declarant and the "very nature of the circumstances under which the incriminating information became known," are viewed as inherently trustworthy. 2 LaFave, Search and Seizure, § 3.4(a) (1996) at 210. For example, "[w]hen the information upon which the warrant is based comes from one who claims to have witnessed a crime . . . the information carries with it indicia of reliability and is generally presumed to be reliable." *Dawson*, 985 S.W.2d at 950 (quoting *State v. Belcher*, 805 S.W.2d 245, 250 (Mo.App.1991)). Furthermore, hearsay information in a search warrant affidavit from an ordinary citizen is considered "more deserving of a presumption of reliability than [information provided by] informants from 'the criminal milieu.' " *Id.* (quoting *State v. Dudley*, 819 S.W.2d 51, 54 (Mo.App.1991)).

In the instant case, there are several grounds upon which the hearsay in question can properly be credited. First, it is worth noting that much of the information contained in the challenged affidavit came from store employees—concerned, ordinary citizens who have no incentive to fabricate. These are individuals who personally witnessed appellant take steps in preparation of the commission of a crime, received no gain or concession in exchange for the information, and did not convey the information to authorities as anonymous informants. As such, the concern over the reliability of their statements is greatly reduced. *Id.* (finding that hearsay report creditable where informant choose not to proceed anonymously, and conveyed first-hand factual observations). The affidavit also relies on statements from several law enforcement officials. These too are inherently reliable: "courts have consistently held that another law enforcement officer is a reliable source and that consequently

no special showing of reliability need be made as a part of the probable cause determination." *Williams,* 9 S.W.3d at 16 (quoting *Dudley,* 819 S.W.2d at 54–55).

In addition, the fact that the hearsay reports in the affidavit came from multiple sources and all tend to establish the same thing—that appellant was engaged in the manufacture of methamphetamine—further suggests that each independent source was credible. In that regard, the affidavit is based on accounts from employees at three different stores, all of which disclosed that appellant had purchased unusually large quantities of materials used in the manufacture of methamphetamine. These reports corroborated reports from informants that appellant was manufacturing methamphetamine, and vice versa.

Appellant also contends that some of the information in the affidavit is too stale to support a finding of probable cause because it concerns incidents that occurred as long as fourteen months prior to the execution of the warrant. However, even if this information was not, by itself, sufficient to establish a fair probability that contraband or evidence of a crime would be uncovered at appellant's residence, proof of past criminal activity can still be considered, in conjunction with other more recent and relevant circumstances, in determining whether there was probable cause to issue the warrant. *Id.* at 17.

After review of the affidavit, it is apparent that a common sense evaluation of averments contained therein dictates a finding of probable cause. Given the totality of circumstances set forth in the lengthy and detailed affidavit, this Court discerns no basis for concluding that the circuit court erred in issuing the warrant to search appellant's home.

## III. The Sufficiency of the Information

In his second point, Appellant alleges that the trial court erred in allowing the state to submit its second amended information because it failed to properly charge appellant with creation of a controlled substance. The first information filed by the state charged appellant with "creation of a controlled substance in violation of section 195.420, in that he knowingly possessed methanol, hydrogen peroxide, lighter fluid, naphtha, muriatic acid and other solvents proven to be precursor ingredients of methamphetamine, with the intent to create methamphetamine." An amended information was filed, charging appellant as a prior and persistent offender. The second amended information was then filed, which charged appellant with knowingly possessing "methanol or hydrogen peroxide or lighter fluid or naphtha or muriatic acid or pseudoephedrine or ephedrine or acetone and other solvents proven to be precursor ingredients of methamphetamine" with the intent to create methamphetamine. Appellant argues that because the second amended information lists the precursor substances in the disjunctive form, it fails to sufficiently charge him with a violation of section 195.420.

The state concedes that it should not have charged possession of each chemical disjunctively in a single count, as possession of any one of the listed chemicals, by itself, is a separate and distinct offense under section 195.420. *See State v. Hartman,* 364 Mo. 1109, 273 S.W.2d 198, 203 (1954); *State v. Barr,* 326 Mo. 1095, 34 S.W.2d 477, 480 (1930); *State v. Hook,* 433 S.W.2d 41, 43–44 (Mo.App.1968). Nevertheless, the state argues that appellant is not entitled to relief, because he did not timely object to the form of the information and has failed to demonstrate that he suffered actual prejudice as a result of the disjunctive submission.

Failure to challenge the validity of an information or indictment before a

verdict is entered severely limits the scope of available appellate review. When the issue is raised for the first time on appeal, "the indictment or information will be deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced." *State v. Parkhurst*, 845 S.W.2d 31, 35 (Mo. banc 1992). "In either event, a defendant will not be entitled to relief based on a post-verdict claim that the information or indictment is insufficient unless the defendant demonstrates actual prejudice." *Id.*

"A defendant suffers actual prejudice only if the indictment or information was so deficient that the defendant was not placed on notice as to what crime he was being charged with, or was so lacking in clarity that the defendant was unable to properly prepare a defense." *State v. Pride*, 1 S.W.3d 494, 503 (Mo.App. 1999), (citing *State v. Briscoe*, 847 S.W.2d 792 (Mo. banc 1993)). Here, appellant did not suffer any prejudice, because the faulty information simply could not have hindered his defense. The disjunctive form of the information required that appellant defend against a claim that he possessed all of the named chemicals. However, even if the information had listed the precursors in the appropriate conjunctive form, appellant would have had to prepare the exact same defense. Furthermore, the information, which specifically cited the section of the criminal code alleged to be violated, placed appellant on notice that he would be facing a charge of illegally manufacturing a controlled substance, and appellant has failed to identify any aspect of his defense that would indicate otherwise. Consequently, appellant cannot demonstrate actual prejudice as a result of the disjunctive submission. This point is denied.

## IV. The Sufficiency of the Verdict Director and Verdict Form

In his next point, appellant argues that the trial court erred in submitting the state's verdict director and verdict form because they violated his right to a unanimous jury verdict. Specifically, appellant charges that the disjunctive form of the director, as well as the generalized statement of the charged crime contained in the verdict form, made it impossible to discern which chemical or chemicals appellant was found to have possessed in violation of section 195.420. Therefore, appellant contends, it may well be that less than all of the twelve jurors found him guilty of possession of the same chemical beyond a reasonable doubt.

The verdict director reads in relevant part:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about March 10, 2000, in Henry County, Missouri, the defendant possessed methanol or hydrogen peroxide or lighter fluid or naphtha or muriatic acid or pseudoephedrine or ephedrine or acetone, and

Second, that the defendant was aware of its presence and nature, and

Third, that the defendant did so with the intent to convert, process or alter methanol or hydrogen peroxide or lighter fluid naphtha or muriatic acid or pseudoephedrine or ephedrine or acetone to create methamphetamine, a controlled substance, then you will find the defendant guilty of possession of a chemical with the intent to create a controlled substance.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions,

you must find the defendant not guilty of that offense.

. . . .

As used in this instruction the term "controlled substance" includes methamphetamine.

The verdict form stated:

We, the jury, find the defendant Gary Lynn Baker guilty of possession of a chemical with the intent to create a controlled substance as submitted in Instruction No. 6.

 Because appellant failed to timely challenge the verdict director and verdict form, he seeks plain error review under Rule 30.20. This Court will find plain error only where the alleged error "facially establish[es] substantial grounds for believing a manifest injustice or miscarriage of justice occurred." *State v. Rhodes*, 988 S.W.2d 521, 526 (Mo. banc 1999). To establish that the instructional error rose to the level of plain error, appellant must demonstrate that the trial court so misdirected or failed to instruct the jury that it is evident that the instructional error affected the jury's verdict. *State v. Nolan*, 872 S.W.2d 99, 103 (Mo. banc 1994).

 Appellant argues that the verdict director and verdict form make it impossible to determine whether the jury did in fact find him guilty of each element beyond a reasonable doubt, because some jurors could have concluded that appellant possessed one of the listed chemicals, while others concluded that he had possessed another. The state concedes technical error in this regard. However, because the evidence at trial established unequivocally that each of the chemicals was found in appellant's residence, which was ample evidence to support a finding that appellant possessed each of the chemicals, no manifest injustice occurred.

*State v. Mackey*, 822 S.W.2d 933, 936 (Mo.App.1991) (finding that the disjunctive form of the instruction did not result in manifest injustice because there was sufficient evidence presented at trial to support each alternative submission).

Finally, appellant alleges that, because the verdict director and verdict form make it impossible to ascertain which chemical he was found to have possessed, he will be unable to plead former jeopardy as to possession of all of the listed chemicals. Appellant offers no authority to support the proposition. Furthermore, the argument was not raised until appeal and is subject only to plain error review on a showing of manifest injustice. Rule 30.20. In any event, the argument is simply not plausible. There is no reason to believe that the state could bring a later claim charging appellant again with possession of the same chemicals. The point is denied.

### V.

Having found no reversible error in the proceedings below, the judgment is affirmed.

WHITE, WOLFF, BENTON, LAURA DENVIR STITH and TEITELMAN, JJ., concur.

PRICE, J., concurs in separate opinion filed.

WILLIAM RAY PRICE, JR., Judge, concurring.

I concur in the affirmance of the felony conviction. However, I would hold that appellant waived his continuing objection by affirmatively stating "no objection" when the exhibits were offered into evidence and that any review is therefore limited to a review for plain error.

## I.

Appellant was charged and convicted of the class C felony of "creation of a controlled substance", specifically, methamphetamine. Immediately prior to trial, appellant renewed a motion to suppress the physical evidence in the matter, including chemicals, equipment and other items seized from appellant's residence. Appellant alleged that the search of his residence was improper due to lack of probable cause resulting from "stale" information and hearsay information. Appellant also alleged improper execution of the search warrant in that the search was conducted at nighttime and the police did not "knock and announce" prior to entering. Also prior to trial, appellant's counsel ("counsel") indicated that he would seek a continuing objection during trial and the prosecutor indicated that he would agree to a continuing objection.

At trial, during the state's opening statement to the jury, the prosecutor referenced the physical evidence covered by the motion to suppress. At that point, counsel objected to "any further comment from the prosecutor regarding any evidence which was obtained through the search warrant." Counsel objected that "the Court should suppress any evidence based on ... lack of probable cause" and that "the execution was not done properly." The objection was overruled. Counsel then requested that the objection be a continuing objection and the state and the court agreed.

Later in the case, counsel's response to the state's offer of exhibits recovered from the search of appellant's residence into evidence was much different. When the state offered this evidence, some 110–177 pages later in the transcript, rather than simply remaining silent or stating something to the effect of "no further objection," counsel affirmatively indicated no objection each time such evidence was of-fered. Specifically, each time such evidence was offered, counsel stated:

MR. KOPP: Okay. Judge, at this time I'd like to offer State's Exhibits 1, 2, 3, and 5 into evidence.

MR. PETTY: Judge, we don't have any objection to the introduction of these exhibits. (Tr. 286).

. . . .

MR. KOPP: I offer State's Exhibit 41 into evidence at this time, your Honor.

MR. PETTY: Judge, no objection. (Tr. 348).

. . . .

MR. KOPP: Judge, at this time, I'd offer into evidence ... State's Exhibits ... 42, 43, 44, and 47.

MR. PETTY: Judge, we have no objection to these. (Tr. 348).

. . . .

MR. KOPP: At this time, Judge, I'm going to offer into evidence State's Exhibits ... 6, 34, 10, 39, 30, 31, 36, 14, 28, 25, ... and 22.

MR. PETTY: Defense has no objection to the introduction of these. (Tr. 349).

. . . .

MR. KOPP: At this time, Judge, State would offer State's Exhibit 4, 20, 21, 24, 27, 29, 33, 37, and 13.

MR. PETTY: The defense has no objection. (Tr. 349).

. . . .

MR. KOPP: One more time. State's going to offer State's Exhibits 7, 8, 9, 11, 12, 15, 16, 17, and 35.

MR. PETTY: No objection. (Tr. 350).

. . . .

MR. KOPP: Offer State's Exhibit 45 into evidence, your Honor.

MR. PETTY: No objection. (Tr. 351).

. . . .

MR. KOPP: Offer State's Exhibit 46 into evidence, your Honor.

MR. PETTY: No objection to State's— (Tr. 353).

Appellant contends that the statements regarding admission of the evidence actually meant "no further objection." However, that is not what was stated. In fact, counsel's first response was that he did not have "*any* objection" to the introduction of that evidence.

The majority recognizes that this Court has long held that "stating 'no objection' when evidence is introduced precludes direct appellate review of the admission," *State v. Starr*, 492 S.W.2d 795, 801 (Mo. banc 1973) and that counsel is obligated to make specific objections at trial. *See Williams v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987). The majority also notes, "[a]ppellant's contradictory statements regarding the admission of the seized evidence would seem to lead to the precise uncertainties the rule was designed to prevent." Nonetheless, the majority opinion circumvents the rule, citing court of appeals decisions asserting that to declare a waiver in this situation "would be a hypertechnical application" of the rule. It assumes that appellant's counsel meant something different than what he said.

The record discloses very few objections at trial. A close review of those objections reveals no additional evidentiary issues regarding the physical evidence obtained under the search warrant other than those covered in appellant's motion to suppress and continuing objection. Thus, counsel's statement of "no objection" to admittance of this evidence could only pertain to those issues covered under his previous continuing objection. There is no indication in the record to support a conclusion that counsel was confused, mistaken, or misspoke. To apply waiver in this situation

would not be a "hypertechnical application" of the rule.

Only three conclusions can be reached to answer the question of why, after fighting so diligently for the motion to suppress, counsel would state that he did not "have any objection" to this evidence: 1) Counsel simply changed his mind during the course of the trial; 2) counsel believed that he was actually stating "no further objection;" or 3) counsel sought to minimize the effect of his objection on the jury's perception of this evidence—essentially pandering to the jury to gain favor.

It is unlikely that counsel simply changed his mind. Counsel fought painstakingly to suppress this evidence. It is unlikely that he would simply reverse course after having heard the evidence. This leaves two other explanations.

Admittedly, it is plausible that counsel simply misspoke and truly meant "no further objection." However, counsel might also have engaged in the precise manipulation the majority admits it fears but then disregards—that counsel consciously stated "we don't have any objection to the introduction of these exhibits" to minimize the jury's perception that appellant might fear introduction of these exhibits, yet preserve the issue on appeal through the continuing objection.

The crux of appellant's defense at trial was two-fold and somewhat inconsistent. If he could keep out the evidence gathered in the search, the state's case would be unpersuasive, if not insufficient. Alternatively, appellant argued that certain police officers had some sort of vendetta against him and that the items seized under the warrant were simple household and business items put to ordinary and legal use. To show further opposition to these exhibits would have undermined appellant's defense that the goods were for innocent use only. A statement of "no objection" indi-

cated to the jury that appellant did not fear these exhibits because they were not important to the state's case against him. It appears most likely that counsel attempted to have it both ways.

It is counsel's burden to produce a clear record of his objection. Neither the opposing attorney, nor the trial court, should be forced to speculate that a lawyer speaking in open court means something other than what he or she says. Nor should a jury be allowed to be fooled by such a strategy. This is the precise reason for the rule. In the context of a continuing objection, a lawyer may remain silent or should simply state "no further objection" or "no additional objection" if that is truly what the lawyer means. He or she should not be allowed to state the opposite, that "we don't have any objection" or "no objection," and still preserve the objection.

Application of the traditional rule does not leave appellant without a remedy, nor does it change the outcome of this appeal. Review still remains for plain error.

## II.

I would abide by the rule declared in *State v. Starr* and hold that counsel's affirmative statement to the court that he had no objection to admission of the physical evidence waived his prior continuing objection, limiting analysis to plain error review.