

# In the Missouri Court of Appeals
# Eastern District

<u>**DIVISION TWO**</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112280 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Shelby County |
| vs. | ) | Cause No. 21SB-CR00013-01 |
| | ) | |
| JOSHUA A. DODD, | ) | Honorable Frederick P. Tucker |
| | ) | |
| Appellant. | ) | FILED: April 22, 2025 |

<u>Opinion</u>

Joshua A. Dodd (Dodd) appeals from the trial court's judgment following jury convictions for raping and molesting his six-year-old daughter (Victim). Dodd raises two points on appeal. Point One argues the trial court abused its discretion in admitting testimony and photographs from the Children's Division (CD) Investigator about his home's unsanitary conditions, which he argues were irrelevant to whether he raped Victim and prejudiced the outcome of his trial. Point Two challenges the admission of testimony from Foster Mother about an incident involving Dodd, Victim, and Sister as impermissible evidence of uncharged bad acts that was more prejudicial than probative. Because cumulative and overwhelming evidence supported the jury's verdicts, Dodd has not shown the admission of the challenged testimony resulted in outcome-determinative prejudice or, for the unpreserved portion of his claim, manifest injustice. We deny both points. Accordingly, we affirm the trial court's judgment.

Background

The State charged Dodd with statutory rape in the first degree and child molestation in the first degree for committing sexual offenses against Victim, his child who was less than twelve years old. Following a 491 Hearing,[1] the case proceeded to trial against Dodd and his wife, Co-Defendant. Co-Defendant testified for the State, and Dodd did not take the stand. Viewing the facts in the light most favorable to the verdict, we limit the following facts from trial to those which are necessary to resolve the appeal.[2]

Dodd and Co-Defendant lived at their home with their children: Victim, Sister, an older brother, and a younger brother. On September 18, 2020, Victim, then six-years old, arrived to kindergarten appearing sad and experiencing vaginal pain. Victim made tentative disclosures to school personnel, including the Principal, who had previously hotlined the CD on Victim's behalf for issues relating to cleanliness, safety, diet, and educational neglect. School personnel hotlined the CD for possible sexual abuse because Victim reported people in her house hit, tickled, and touched her bottom, and that she and her family "go into a trance" and (indicating her private parts) "touch her there and it hurts." Victim said she had superpowers that kept them from touching her there, but sometimes they did not work. Victim was afraid to use the restroom by herself and left blood on the toilet seat and had fecal matter in her underwear.

CD Investigator performed a home visit and determined it was necessary to immediately remove Victim and her siblings from Dodd and Co-Defendant's care. At trial, Dodd objected to the CD Investigator's testimony and to each photograph admitted about the home's unsanitary living conditions, which the trial court overruled, except for sustaining an objection to

---

[1] At a Section 491.075 hearing, RSMo (2016), the trial court decides whether or not to admit the victim's out-of-court statements based on the information provided at the hearing. *See State v. Ellis*, 701 S.W.3d 647, 656 (Mo. App. E.D. 2024).
[2] *State v. Thomas*, 628 S.W.3d 686, 688 (Mo. App. E.D. 2021).

photographs of the children's bedroom for lacking relevance. Co-Defendant and Principal both testified to the unsanitary conditions of the home, to which which Dodd did not object. During Dodd's closing argument, he reminded the jury that evidence of a dirty home was not proof that he committed the charged offenses.

After being placed in foster care, Victim began disclosing sexual abuse by Dodd over the next few months. Victim's first foster mother (Foster Mother) and current foster mother (Permanent Foster Mother) each testified about Victim's detailed disclosures of sexual abuse by Dodd, including acts of molestation and vaginal intercourse—the specifics of which are not necessary to decide this appeal. Foster Mother testified that Victim told her that Dodd and Co-Defendant "would hold her down" and cover her mouth as she "screamed loud enough for the whole world to hear but nobody came." Both foster mothers also testified that Victim disclosed incidents in which Dodd would physically punish her and spank her. Victim, who was nine years old at the time of trial, took the stand and testified that Dodd and Co-Defendant touched her private parts.

The State also called a Law Enforcement Officer, a Psychiatrist, two Forensic Interviewers from the Children's Advocacy Center (CAC) who interviewed Victim, and the Sexual Assault Forensic Examination (SAFE) Examiners who examined Victim two months after being removed from the home and then five months later. Psychiatrist testified that Victim's behavioral symptoms—including chronic post-traumatic stress disorder secondary to complex trauma, attention deficit hyperactivity disorder, oppositional defiant disorder, and encopresis and enuresis (incontinence)—and her urinary tract infection were consistent with sexual abuse, especially when a child is abused during the time they are toilet training.

On direct examination of Foster Mother, the State asked about an incident that occurred on November 29, 2020. Foster Mother began describing how Victim and Sister were playing, then things got suspiciously quiet so she checked in and saw Sister with her pants and diaper off. Familiar with the anticipated testimony from the 491 Hearing, Defense Counsel objected, and the attorneys discussed the objection at sidebar outside the hearing of the jury. Defense Counsel's objection was lodged on the grounds that the upcoming testimony would be unconstitutional in that Foster Mother was about to testify to highly prejudicial uncharged bad acts. Specifically, Defense Counsel indicated Foster Mother would first say that Victim said she was "tickling [Sister] like Daddy tickles me." Defense Counsel then stated Foster Mother would go on to say that Victim said: "Daddy was doing this too, to [Sister]." The State denied that Foster Mother would testify about Dodd doing anything to Sister in that context. Defense Counsel next informed the trial court that Foster Mother would go on to say that Victim recounted a time she saw Dodd doing something to Sister and how Dodd picked Victim up and threw her to the ground and urinated on her when he caught her watching. The State argued all of the evidence could come in because it would contextualize Victim's fear of Dodd and be relevant to the credibility of her disclosures. The trial court ruled to limit the testimony. The trial court permitted the State to instruct Foster Mother to proceed but to be vague about Dodd's uncharged conduct. Over Dodd's objection, the State continued its direct examination of Foster Mother before the jury.

Foster Mother testified with respect to the playroom incident that she confronted Victim about why Sister was unclothed with Victim's hand on Sister's vaginal area. Victim answered: "Well, I was just tickling [Sister] like Daddy tickles me." Foster Mother explained to Victim how that was not okay, then Victim defecated in her pants, which Foster Mother testified was a

4

common occurrence when Victim knew she had done something wrong that made her feel uncomfortable. When Foster Mother led Victim to a bath to clean up, Victim told her that "mommies don't give little girls baths . . . daddies give little girls baths." While in the bath, Victim started talking about how Dodd would rub and pull on her vagina in the bathtub, and if she would cry or argue, he would spank her and continue.

Foster Mother started to testify that Victim "said that she had seen Daddy do some things—" and the State stopped her in order to remind her outside the jury's hearing about the vagueness limitation. The State then elicited the following testimony:

| Foster Mother: | She had made a disclosure. She had said that she had seen Daddy doing something, and that she had been watching and that her Daddy had caught her watching that happen. |
|---|---|
| State: | And what did she say he did to her when he caught her watching him do something? |
| Foster Mother: | That he picked her up, screamed in her face, threw her to the floor, and then peed on her, getting it in her eyes and in her mouth. She was crying as she disclosed this information. was very hard for her. She was choking it out in that sense. She talked about it being sour in her mouth, and she, like, grabbed the corner of her mouth, and you could see her whole facial expression change as she was recalling that information. Like I said, she was crying and rubbing her eyes, said that it stung really bad. She said she was laying on the floor crying like that, and he told her never to tell anybody what she had seen. |

Dodd did not object during this testimony.

At the close of trial, the jury found Dodd guilty on first-degree statutory rape and two counts of first-degree child molestation. Dodd filed a motion for new trial and, during argument on the motion, the parties and trial court discussed with respect to uncharged bad acts how no evidence actually came in through Foster Mother's testimony that Dodd sexually abused Sister. The Stated recounted that the only evidence of that came in from the SAFE Examiner, to which

5

Dodd did not object. The trial court overruled Dodd's motion and sentenced him to a total of eighty years in prison. Dodd now appeals.

<u>Standard of Review</u>

"We review claims challenging the admission of evidence for clear abuse of discretion." *State v. Redmond*, 686 S.W.3d 333, 340 (Mo. App. E.D. 2024) (*State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006)). "A trial court abuses its discretion when its decision is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* (quoting *State v. Thomas*, 628 S.W.3d 686, 691 (Mo. App. E.D. 2021)). "[I]f reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *State v. Mills*, 687 S.W.3d 668, 675 (Mo. banc 2024) (quoting *State v. Brandolese*, 601 S.W.3d 519, 533 (Mo. banc. 2020)).

We review the trial court's evidentiary ruling "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Prince*, 534 S.W.3d 813, 818 (Mo. banc 2017) (quoting *Forrest*, 183 S.W.3d at 223–24)). A defendant demonstrates prejudice by showing the error was outcome-determinative. *Redmond*, 686 S.W.3d at 340 (internal citation omitted).

"For unpreserved claims of error, a defendant must meet a higher standard of showing manifest injustice resulted from the inadmissible evidence." *State v. Stafford*, 589 S.W.3d 705, 712 (Mo. App. E.D. 2019) (citing *State v. Johnson*, 207 S.W.3d 24, 34 (Mo. banc 2006)).

<u>Discussion</u>

I.      **Point One—No prejudice from admission of CD Investigator's testimony**

In his first point relied on, Dodd argues the trial court erred in admitting irrelevant evidence about the condition of his home, which inflamed the jury's passions and sympathies, thereby prejudicing the outcome of his trial. We find no abuse of discretion in the trial court's

6

ruling due to cumulative evidence of living conditions in the home and overwhelming evidence of Dodd's guilt.

Evidence is only admissible when it is both legally and logically relevant. *State v. Banks*, 582 S.W.3d 919, 924 (Mo. App. E.D. 2019) (citing *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002)). Logical relevance "is a very low-level test that is easily met." *Id.* at 924–25 (quoting *Prince*, 534 S.W.3d at 819). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (quoting *Anderson*, 76 S.W.3d at 276). "Legal relevance weighs the probative value of the evidence against its costs—unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* (quoting *Anderson*, 76 S.W.3d at 276). "A trial court should therefore exclude logically relevant evidence if its costs outweigh its benefits." *Thomas*, 628 S.W.3d at 691 (citing *Anderson*, 76 S.W.3d at 276).

Dodd maintains that CD Investigator's testimony and photographs about the chaotic, unsanitary, and "deplorable" conditions of the family home observed when taking emergency custody of the children was not logically relevant to the sexual-offense charges against him. Dodd alleges inflammatory evidence of the family's living conditions allowed the jury to infer that Dodd was simply a bad person and find him guilty on that improper basis.

We find minimal probative value in the evidence about the home's uncleanliness with respect to whether Dodd committed the charged offenses against Victim. *See Banks*, 582 S.W.3d at 924 (quoting *Anderson*, 76 S.W.3d at 276). However, the trial court's ruling will not be reversed for an abuse of discretion unless we find the evidence prejudiced Dodd by depriving him of a fair trial. *Id.* at 923 (quoting *Prince*, 534 S.W.3d 818). "A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so

7

influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." *Thomas*, 628 S.W.3d at 694 (internal quotation omitted). Dodd has not shown the requisite outcome-determinative prejudice.

First, we will not find prejudice in a trial court's admission of evidence that is merely cumulative to other similar evidence to which the defendant did not object. *Brandolese*, 601 S.W.3d at 536 (quoting *Saint Louis Univ. v. Geary*, 321 S.W.3d 282, 292 (Mo. banc 2009) ("A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence.")). Evidence of Dodd's home being unclean was already in evidence from the school principal. Principal testified about how about the school was handling bedbugs and lice that Victim transmitted from home as well as how the school was aware of issues with cleanliness, safety, diet, and educational neglect at the Dodd home, which resulted in multiple CD hotline calls. Additionally, Co-Defendant testified about how the conditions of her and Dodd's home were unsanitary and "atrocious," leading to repeated interventions by the CD. Because Dodd did not object to cumulative evidence at trial on the issue of which he now complains, any erroneous admission by the trial court on this topic is held harmless. *See id.*

Moreover, we agree with the State that evidence as to the condition of Dodd's house did not unfairly eclipse the State's significant admissible evidence that Dodd raped and molested his six-year-old daughter. *See Thomas*, 628 S.W.3d at 694 (citing *State v. Wood*, 580 S.W.3d 566, 575 (Mo. banc 2019) (finding overwhelming admissible evidence of guilt negates any reasonable probability the outcome would have been different even if the objectionable evidence had been excluded)). Multiple witnesses testified about the abuse Victim suffered. Victim testified at trial and exhibited medical and behavioral symptoms consistent with sexual abuse, including showing

8

sexual knowledge exceeding age-appropriate levels. In video recordings of Victim's CAC interviews played for the jury, Victim acted out sexual abuse with her fingers on dolls and also did so on Foster Mother's hand. Due to overwhelming evidence of guilt, Dodd has not shown that the verdict reasonably would have had a different outcome absent the disputed evidence. *See id.*

Our confidence in the correctness of the result is also supported by the facts that Dodd reminded the jury in closing argument how the condition of the home was not a basis for conviction and that the trial court instructed the jury to convict Dodd based solely on the elements of the charged conduct. *See Banks*, 582 S.W.3d at 926 (*State v. McFadden*, 391 S.W.3d 408, 424 (Mo. banc 2013) (noting we presume that the jury followed the trial court's instructions)). Dodd has not met his burden to show that the admission of evidence about the unsanitary condition of the home resulted in a reasonable probability that the jury would have acquitted him had the trial court excluded that portion of CD Investigator's testimony and photographs. *See Thomas*, 628 S.W.3d at 694. We deny Point One.

## II.     Point Two—No prejudice from admission of Foster Mother's testimony

In Point Two, Dodd challenges the trial court's admission of testimony from Foster Mother involving uncharged bad acts. First, Foster Mother testified that she found Victim playing with her younger Sister, who was unclothed with Victim's hand on Sister's vagina, and Victim told her: "Well, I was just tickling [Sister] like Daddy tickles me." Second, Foster Mother testified Victim told her "that she had seen Daddy doing something, and that she had been watching and that her Daddy had caught her watching that happen." And when Dodd caught her watching, "he picked her up, screamed in her face, threw her to the floor, and then peed on her[.]" Dodd argues the nature of the uncharged criminal acts, particularly an implication that the "something" Victim saw Dodd doing was the sexual abuse of Sister, was so

9

inflammatory as to prejudice the outcome of his trial. We disagree, because the trial court effectively limited the testimony to avoid such implication. Thus, as no uncharged sexual misconduct towards Sister was introduced, we find no error as to that claim. Further, to the extent the trial court allegedly erred in admitting the physical punishment evidence, we find Dodd failed to renew his objection at the time of Foster Mother's testimony. Consequently, exercising our discretion to review that claim for plain error, we find no manifest injustice.

### A.      Preservation

Preliminarily, the State contends Point Two is impermissibly multifarious. Points on appeal that raise multiple distinct claims of error are considered deficient under Supreme Court appellate procedural Rule 84.04, preserve nothing for review, and are susceptible to dismissal. *See Matter of A.K.*, 679 S.W.3d 498, 512 n.3 (Mo. App. E.D. 2023) (quoting *Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 478 n.6 (Mo. banc. 2018)). The State argues Point Two is impermissibly multifarious because it challenges two distinct pieces of evidence: (1) that Victim watched Dodd do something possibly sexual to Sister, and (2) that Dodd punished Victim for witnessing said conduct by screaming at her, throwing her down, and urinating on her. "[W]e have discretion to exercise review of multifarious points on appeal when the argument is readily ascertainable and does not require us to become an advocate for one party." *Id.* (internal quotation omitted).

The State suggests that if we exercise our discretion to review the admission of both pieces of evidence *ex gratia*, the second claim was not preserved inasmuch as Dodd did not specifically object to the testimony about Dodd punishing Victim at the time the testimony was given. "The scope of an appellant's claim on appeal is limited by the claim as presented in the motion for new trial, which in turn is limited by the scope of the objection lodged ***at the time the challenged evidence was offered at trial.***" *Stafford*, 589 S.W.3d at 711 (internal quotation

10

omitted) (emphasis added). We recognize that Dodd's initial objection and sidebar discussion challenged both pieces of evidence as uncharged bad acts. Through that objection, Dodd secured a favorable limitation ruling: the witness must remain vague in her testimony about Dodd's uncharged bad acts. The State correctly points out that Foster Mother testified at length—five pages' worth—about the tickling evidence plus two other unchallenged disclosures made in the bathtub and at bedtime regarding Dodd's sexual abuse of Victim *before* testifying about Dodd punishing Victim for having witnessed something. Foster Mother then testified in detail about that physical punishment and how difficult it was for Victim to disclose it, crying as she told Foster Mother about Dodd's uncharged bad act of picking her up, screaming at her, and urinating on her. Dodd did not renew his objection at that time, instead relying solely on the initial objection. No party argues that Dodd asked for or was granted a continuing objection. *See State v. Burroughs*, 627 S.W.3d 69, 75 (Mo. App. E.D. 2021) (citing *State v. Baker*, 103 S.W.3d 711, 717 (Mo. banc 2003) (noting a defendant does not have an obligation to renew his objection by reasserting the argument for which he had already been granted a continuing objection)). Given the trial court's ruling that the witness must keep Dodd's uncharged conduct vague, the burden was on Dodd to object when the witness failed to remain vague and instead gave a detailed and emotional account of Victim's disclosure about being punished by Dodd. *See Stafford*, 589 S.W.3d at 711; *see also State v. Minor*, 648 S.W.3d 721, 743 (Mo. banc 2022) (Powell, J., concurring) (internal quotation omitted) ("Missouri courts reject invitations to criticize trial courts for declining to *sua sponte* take action on behalf of a party during witness examination."). We therefore must consider the second claim unpreserved, but we choose to exercise our discretion to review it for plain error.

11

B.      Analysis of Uncharged Bad Acts

"Evidence of uncharged crimes is generally inadmissible to show a defendant's propensity to commit the charged offense." *Stafford*, 589 S.W.3d at 711–12 (internal citations omitted). The reason for this principle is due to concerns that "[t]he jury may use the evidence of the uncharged crime to infer the defendant has a general criminal disposition, a bad character, or a propensity or proclivity to commit the type of crime charged, which, in turn, results in the jury basing a finding of guilt on the uncharged crime." *Thomas*, 628 S.W.3d at 691 (internal quotation omitted). "Admission of evidence to show a criminal defendant's propensity to commit an offense is generally disfavored, but both federal and state law recognize an exception regarding crimes of a sexual nature against children." *State v. Smith*, 689 S.W.3d 798, 804 (Mo. App. E.D. 2024) (citing *State v. Williams*, 548 S.W.3d 275, 281–86 (Mo. banc 2018)). Since 2014, in prosecution for sexual offenses against minors, Missouri has expressly permitted the admission of evidence of a defendant's past sexual misconduct, charged or uncharged, "for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged." *Banks*, 582 S.W.3d at 924 (quoting MO. CONST. art. I, § 18(c)).

Even if evidence of uncharged bad acts is not introduced for the purpose of proving a defendant's propensity to commit the charged offense, which it was not in this case, said acts may be admissible for a proper purpose as an exception to the general exclusionary rule. *State v. Miller*, 372 S.W.3d 455, 473 (Mo. banc 2012) (internal quotation omitted). Missouri recognizes the following exceptions: "(1) motive; (2) identity of the person charged; (3) intent; (4) absence of mistake or accident; (5) a common scheme or plan; or (6) a complete and coherent picture of the circumstances and events surrounding the charged crime." *State v. Coleman*, 580 S.W.3d 11, 13 (Mo. App. E.D. 2019) (internal citation omitted); *see also Prince*, 534 S.W.3d at 818 (internal

12

quotation omitted); *Miller*, 372 S.W.3d at 473 (internal quotation omitted). For child sexual offenses, the complete and coherent picture of the circumstances may include evidence explaining a delayed disclosure, recantation, or tentative disclosure, explaining why the child may give alternative sources for injuries or pain, and explaining the relationship between the victim and defendant. *See Miller*, 372 S.W.3d at 474 (internal citation omitted). Prior uncharged acts have "enhanced" probative value when the child child's credibility is at issue. *See State v. Brown*, 596 S.W.3d 193, 209 (Mo. App. W.D. 2020) (citing *Williams*, 548 S.W.3d at 290). Missouri courts have admitted prior uncharged sexual misconduct in cases like this to prove a defendant's *modus operandi* of "tend[ing to molest children of his own blood in his home." *Banks*, 582 S.W..3d at 925 (admitting testimony from another family member that the defendant molested her as a child as propensity evidence that the defendant molested the current victim).

Once a permissible use is identified, the trial court must use its discretion to determine whether the probative value outweighs the prejudicial effect. *Coleman*, 580 S.W.2d at 13–14 (internal citation omitted); *see also Banks*, 582 S.W.3d at 924 (quoting *Williams*, 548 S.W.3d at 288) (noting it is essential that evidence admitted under article I, § 18(c) satisfy the balancing test).

### 1. Claim One—Dodd's Uncharged Sexual Abuse of Sister

The risk posed by presenting evidence that alludes to the possible uncharged sexual abuse of another child, especially the defendant's toddler-aged daughter, is especially high given its inflammatory nature. In response to Dodd's preemptive objection, the trial court recognized that risk and mitigated it by limiting the witness's testimony. Outside the presence of the jury, the trial court directed the State to advise Foster Mother to be vague in her testimony about Victim's disclosures involving Dodd's uncharged bad acts. As Dodd informed the trial court, based on the pre-trial 491 Hearing, Foster Mother ***could have*** testified that Victim said Dodd not only

13

"tickled" Victim naked on her genitals but ***also did the same to Sister.*** Foster Mother further ***could have*** testified that Victim told her the conduct she observed that she got punished for was Dodd performing sexual acts ***on Sister.*** However, due to Dodd's prompt objection and the trial court's ruling, no such testimony was elicited in front of the jury. *See State v. Blurton*, 484 S.W.3d 758, 774 (Mo. banc 2016) (noting a timely objection before the witness answers allows the trial court to invoke remedial remedies). Foster Mother's trial testimony revealed only (1) that Victim was mimicking Dodd's naked "tickling" ***of Victim***, and (2) that Victim observed seeing Dodd ***"doing something"*** without even indicating Sister was present. Neither statement told the jury that Dodd committed any sexual acts against Sister. Accordingly, whether or not the evidence would have been admissible under one or more of the exceptions explained above, we will not entertain charging the trial court with error for admitting testimony that was not actually admitted. *See Stafford*, 589 S.W.3d at 711–12 (internal citations omitted).

Even had there been some implication that Dodd sexually molested Sister, such evidence would have been cumulative to other similar evidence that was not objected to, and thus non-prejudicial. *See Brandolese*, 601 S.W.3d at 536 (quoting *Saint Louis Univ.*, 321 S.W.3d at 292). Dodd did not object to evidence that he sexually abused Sister adduced from the SAFE Examiner, who testified that he had been informed that "[Victim] said that an adult had put his fingers and penis in her vagina and her sister as well and the baby." Although there is a qualitative difference between a detached medical provider's testimony and the challenged testimony from Foster Mother, the SAFE Examiner testimony is potentially even more damaging for including not only Sister but Dodd's other young child as additional victims of Dodd's abuse. Given that Dodd did not and has not challenged the SAFE Examiner's testimony, we find no reversible prejudicial error from Foster Mother's vague testimony. *See id.*

14

## 2.    Claim Two—Dodd's Uncharged Punishment of Victim

The uncharged bad act evidence at issue in this claim is that Dodd once punished Victim for witnessing him do "something" by "pick[ing] her up, scream[ing] in her face, thr[owing] her to the floor, and then pee[ing] on her[.]"  Victim "talked about it being sour in her mouth."  Victim was "laying on the floor crying" and "[Dodd] told her never to tell anybody what she had seen."

The State suggests this evidence was admissible to paint a complete and coherent picture of the circumstances of the charges that Dodd raped and molested Victim as well as to show the relationship between them, including Victim's fear of Dodd.  *See Prince*, 534 S.W.3d at 818 (internal citation omitted); *Miller*, 372 S.W.3d at 473–74 (internal citation omitted); *Coleman*, 580 S.W.3d at 13 (internal citation omitted).  The State maintains Dodd's punishment and threat was relevant to Victim's multiple delayed disclosures, for which the State adduced other testimony that Dodd and Co-Defendant threatened Victim not to tell anyone about her sexual abuse or else Dodd and Co-Defendant would go to jail and be killed, leaving Victim and her siblings without parents, a home, or food.  Even before adopting the constitutional amendment in article I, § 18(c), Missouri has long permitted a child victim to testify about the defendant physically abusing the victim or others, including other siblings, as relevant to why the victim delayed disclosure of the defendant's sexual abuse.  *See Miller*, 372 S.W.3d at 474.  In this case, evidence of threats and punishment may be relevant to why Victim gave different accounts as to why she had vaginal pain in her tentative disclosures at school before fully disclosing sexual abuse two months after being removed from Dodd's home.

We need not decide whether the evidence satisfied an exception and passed the legal relevance balancing test, because Dodd cannot demonstrate the admission prejudiced the outcome of his trial.  As this claim was unpreserved, we review it for plain error under Rule

30.20,[3] which "requires a finding that manifest injustice or a miscarriage of justice has resulted from the trial court error." *Brandolese,* 601 S.W.3d at 534. "The defendant bears the burden of establishing manifest injustice under the facts and circumstances of the case." *Stafford*, 589 S.W.3d at 710 (quoting *Johnson*, 207 S.W.3d at 49). Manifest injustice is a "higher standard" than mere prejudice. *Id.* at 712 (citing *Johnson*, 207 S.W.3d at 34).

As stated above, evidence is not prejudicial when it is cumulative to other similar evidence to which no objection is raised. *Brandolese*, 601 S.W.3d at 536 (quoting *Saint Louis Univ.*, 321 S.W.3d at 292). Here, the disputed evidence is cumulative to other evidence that Dodd threatened and physically abused Victim. Without defense objection, Foster Mother testified that Dodd would spank Victim when she tried to stop him from sexually assaulting her in the bath tub. Also, without defense objection, Permanent Foster Mother testified that Victim told her about a time when, before sexually assaulting her, Dodd pulled her out from under a bed where she was hiding, grabbed her by the neck, and spanked her with a belt. Dodd was charged only for the sexual assault and not the other uncharged conduct, and Dodd did not object to the other uncharged conduct. Because this similar evidence was admitted without objection, we cannot say the outcome of Dodd's trial was manifestly unjust due to the admission of the challenged testimony. *See id.*

Further, "[a] manifest injustice or miscarriage of justice does not result from the admission of evidence 'when the record demonstrates there was other overwhelming evidence of the defendant's guilt that he does not challenge or which was admissible.'" *Brown*, 596 S.W.3d at 213 (internal quotation omitted). As already described in Point One, the State adduced ample evidence of Dodd's guilt from Victim's multiple detailed disclosures to multiple individuals that

---

[3] All Rule references are to Mo. R. Crim. P. (2025).

were consistent with Victim's symptoms and sexual knowledge.  In light of the graphic and probative overwhelming evidence, Dodd fails to meet his burden on appeal to demonstrate that this single incident of Dodd punishing Victim unfairly impacted the outcome of the verdict.  *See id.*; *see also Thomas*, 628 S.W.3d at 694 (citing *Wood*, 580 S.W.3d at 575).  Point Two is denied.

Conclusion

The judgment of the trial court is affirmed.

_____
Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J. and
Virginia W. Lay, J., concur.

17