**JACKSON COUNTY SPORTS COMPLEX AUTHORITY,**
**Respondent,**

v.

**STATE of Missouri, et al., Appellants.**

**No. SC 87934.**

Supreme Court of Missouri,
En Banc.

June 26, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., Heidi C. Doerhoff, Asst. Atty. Gen., Jefferson City, for Appellants.

Mary Jo Shaney, Michael T. White, Kansas City, for Respondent.

STEPHEN N. LIMBAUGH, JR., Judge.

This is a suit by the Jackson County Sports Complex Authority to invalidate section 64.940.3, RSMo Supp.2005, which mandated that "any expenditure made by the [county sports complex authority] . . . over five thousand dollars . . . must be competitively bid." Section 64.940.3 was enacted in 2005, by the 93rd General Assembly, as part of an amendment to two bills, H.B. 58 and S.B. 210. The trial court entered judgment for plaintiff, holding that the addition of section 64.940.3 to both bills changed their original purpose and rendered the titles of both bills unclear in violation of article III, sec. 21 and sec. 23, respectively, of the Missouri Constitution. Because this appeal involves the validity of a state statute, this Court has exclusive jurisdiction. Mo. Const. art. V, sec. 3. The judgment is reversed.

## STATEMENT OF FACTS:

This case was submitted to the trial court via a joint stipulation of facts tracking the enactment of H.B. 58 and S.B. 210 through the legislative process.

On May 13, 2005, the 93rd General Assembly truly agreed and finally passed H.B. 58 and S.B. 210, the Governor signed both bills into law on July 7, 2005, and both went into effect on August 28, 2005. As introduced, H.B. 58 was a bill to repeal six provisions in chapter 50, RSMo, and one provision in chapter 250, "and to enact in lieu thereof seven new provisions relating to political subdivisions." Five of the six proposed changes dealt with competitive bidding and purchasing requirements for counties. One dealt with county financial statements. The chapter 250 change was directed at giving water supply districts the same ability as cities, towns, villages, and sewage districts to recover for unpaid services.

As finally passed, H.B. 58 repealed and enacted in lieu thereof 165 provisions "relating to political subdivisions." While the final version of H.B. 58 included changes to many other statutory chapters (chapters 44, 49, 54, 55, 59, 64, 65, 67, 71, 82, 94, 100, 105, 115, 135–140, 165, 190, 205, 210, 217, 231, 233, 242, 245–247, 249, 263, 278, 301, 313, 320, 321, 349, 393, 447, 473, 478, 488, 537, 559, 640, 644 and 701), only one provision is directly at issue in the case before this Court: the addition of a new subsection 3 to sec. 64.940. Section 64.940.3 was added to H.B. 58 on May 3, 2005, as an amendment to the Senate Substitute for Senate Committee Substitute for House Committee Substitute for H.B. 58. It provides as follows:

Any expenditure made by the [county sports complex] authority located in a county with a charter form of government and with more than six hundred thousand but fewer than seven hundred thousand inhabitants, that is over five thousand dollars, including professional service contracts, must be competitively bid.

Pursuant to section 64.920 (which has not been changed since it was first enacted in 1965), a county sports complex authority is "a body corporate and politic and a political subdivision of the state of Missouri." Sec. 64.920; *Waris v. Carnes,* 760 S.W.2d 573, 574 (Mo.App.1988), citing section 64.920, RSMo Supp.1965.

S.B. 210, as originally introduced, was a bill to repeal 16 provisions in chapters 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 67, 137, and 473, RSMo and "to enact in lieu thereof 16 provisions relating to county government." Most of the provisions in the original version of S.B. 210 dealt with salaries for county officials (county commissioners, county recorders, clerks, auditors, assessors, collectors, treasurers, prosecuting attorneys, sheriffs, and coroners), but another provision dealt with duties of county assessors and their ability to enter lands and structures to perform assessments.

As S.B. 210 moved through the legislative process, amendments were added, including the March 1, 2005, addition of section 64.940.3 (which is identical to section 64.940.3 enacted as part of H.B. 58). On April 20th, S.B. 210's title was changed from "a bill relating to county government" to "a bill relating to political subdivisions."

As finally passed, S.B. 210 repealed and enacted in lieu thereof 104 provisions "relating to political subdivisions." As with H.B. 58, the final version of S.B. 210 affected many more statutory chapters than the original version of S.B. 210 would have

affected (chapters 44, 52, 59, 64, 65, 89, 94, 100, 110, 115, 136, 139, 140, 165, 190, 205, 210, 233, 242, 245, 250, 263, 301, 321, 388, 483, 545, and 573). But also, as with H.B. 58, only one provision in the final version of S.B. 210—section 64.940.3—is directly in issue in the case before this Court.

With respect to the "original purpose" issue, the trial court concluded that H.B. 58, as introduced, was a narrow bill that "affected the duties of county commissions in procuring supplies and permitted water supply districts organized pursuant to chapter 247 to recover from an occupant of real estate sums due for services provided." In the court's view, the many "substitutes and amendments to House Bill 58" including section 64.940.3, worked to change the bill's "original purpose" in violation of article III, section 21. The court defined S.B. 210's "original purpose" in a similarly narrow fashion, concluding that the bill as introduced "related to salaries of county officials, annual assessments by county assessors and salaries for county public administrators." And like its analysis of the changes to H.B. 58, the court determined that the amendments to S.B. 210, including section 64.940, were in derogation of S.B. 210's "original purpose."

In finding a "clear title" violation, the court compared the title "relating to political subdivisions" to the titles "relating to property ownership" and "relating to economic development" that were determined to be impermissibly overbroad in *Home Builders Ass'n of Greater St. Louis v. State,* 75 S.W.3d 267, 272 (Mo. banc 2002), and *Carmack v. Dir., Mo. Dept. of Agric.,* 945 S.W.2d 956, 960 (Mo. banc 1997), respectively. The court also based its decision on the fact that the "term 'political subdivision' [was] defined differently in no fewer than 15 sections of the Revised Statutes of Missouri" and that "[n]either HB 58 nor SB 210 establishes that its respec-

tive title is limited to any particular definition of political subdivision."

**STANDARD OF REVIEW:**

This Court's review must begin with the recognition that laws enacted by the legislature and approved by the governor have a strong presumption of constitutionality. *Stroh Brewery Co. v. State*, 954 S.W.2d 323, 326 (Mo. banc 1997). Moreover, the "use of . . . procedural limitations to attack the constitutionality of statutes is not favored." *Id.* Instead, this Court "interprets procedural limitations liberally and will uphold the constitutionality of a statute against such an attack unless the act clearly and undoubtedly violates the constitutional limitation." *Id.* The burden of proof rests on the statute's challenger. *Westin Crown Plaza Hotel Co. v. King*, 664 S.W.2d 2, 5 (Mo. banc 1984).

**ANALYSIS:**

Article III, section 21, prohibits any bill from being "so amended in its passage through either house as to change its original purpose." This Court has long held that the original purpose prohibition does not restrict legislators from making "[a]lterations that bring about an extension or limitation of the scope of [a] bill," and "even new matter is not excluded if germane." *Stroh*, 954 S.W.2d at 326. Rather, the prohibition is against amendments that are clearly and undoubtedly not "germane"; that is, they are not "[r]elevant to or closely allied" with a bill's original purpose. *Missouri State Medical Ass'n v. Missouri Dept. of Health*, 39 S.W.3d 837, 840 (Mo. banc 2001); *C.C. Dillon Co. v. City of Eureka*, 12 S.W.3d 322, 327 (Mo. banc 2000). "As the cases illustrate, the general purpose is often interpreted as an overarching purpose, not necessarily limited by specific statutes referred to in the bill's original title or text." *McEuen ex rel. McEuen v. Missouri State Bd. of Educ.*, 120 S.W.3d 207, 210 (Mo. banc 2003). Moreover, a bill's original purpose is not limited to what is stated in the bill's original title, which can be changed without violating article III, section 21. *Missouri State Medical Ass'n*, 39 S.W.3d at 839; *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 38 (Mo. banc 1982).

In *Missouri State Medical Ass'n*, for example, this Court held that a bill that "would have enacted a new section of law requiring that health insurers cover . . . pelvic, prostate, and colorectal examinations and other cancer screenings" had an original purpose in the larger sense of "mandate[ing] health services for serious illnesses, including cancer." 39 S.W.3d at 839–40. Accordingly, the Court held that an amendment adding a requirement that persons receiving breast implants receive standard pre-operation information on the advantages, disadvantages, and risks, including cancer, of breast implantation "logically relat[ed]" to that original purpose and did not violate article III, section 21. *Id.* at 840. *See also C.C. Dillon Co.*, 12 S.W.3d at 325–26 (holding that a bill that "related to transportation" did not lose its original purpose by an amendment adding a provision giving cities and counties the authority to adopt outdoor advertising regulations for highway billboards); *Stroh*, 954 S.W.2d at 325–26 (holding that a bill that provided for the auction of vintage wine had an "original purpose" of amending the State's liquor control law and that an amendment adding malt liquor labeling requirements was permissible); *Akin v. Dir. of Revenue*, 934 S.W.2d 295, 302 (Mo. banc 1996) (holding that the addition of taxation provisions to a bill pertaining to education did not change the bill's purpose, where tax increases were a means for funding education programs).

Given this Court's original purpose jurisprudence as illustrated by the forego-

ing cases, the general, or overarching purpose of H.B. 58 and S.B. 210 as originally introduced can fairly be said to be the regulation of political subdivisions. The purpose was not narrowly limited, as the trial court held, to the subject matter of the specific statutes referenced in the original text. In addition, each of those statutes were "germane" to the larger purpose of regulating political subdivisions. Furthermore, the section 64.940.3 amendment also was germane to the original purpose of H.B. 58 and S.B. 210 because section 64.940.3 regulates a kind of political subdivision—sports complex authorities in counties of a particular population range. In short, there was no original purpose violation.

 Nor was there a clear title violation. Article III, section 23 states that "[n]o bill shall contain more than one subject which shall be clearly expressed in its title." This provision contains two distinct but related procedural limitations—a single subject rule and a clear title requirement. *C.C. Dillon,* 12 S.W.3d at 328. The clear title requirement is intended to keep "legislators and the public fairly apprised of the subject matter of pending laws." *Home Builders Ass'n v. State,* 75 S.W.3d 267, 269 (Mo. banc 2002). To do this, the title need only "indicate in a general way the kind of legislation that was being enacted." *Fust v. Attorney General,* 947 S.W.2d 424, 429 (Mo. banc 1997). Only if the title is (1) underinclusive or (2) too broad and amorphous to be meaningful is the clear title requirement infringed. *Home Builders Ass'n,* 75 S.W.3d at 270. Furthermore, for bills that have "multiple and diverse topics" within a single, overarching subject, that subject may be "clearly expressed by . . . stating some

broad umbrella category that includes all the topics within its cover." *Missouri State Med. Ass'n,* 39 S.W.3d at 841. That is the case here. The single, overarching subject is regulation of political subdivisions [1] and that is the broad umbrella category expressed in the title.

Although the trial court here determined that the title was too broad and amorphous, the only cases in which this Court has so found are those in which the title could describe the better part of all the legislation passed by the General Assembly. For instance, in *St. Louis Health Care Network v. State,* 968 S.W.2d 145, 147–48 (Mo. banc 1998), this Court found a clear title violation in a bill entitled "relating to certain incorporated and non-incorporated entities" under the rationale that "the title . . . could describe any legislation that affects, in any way, business, charities, civic organizations, governments, and government agencies"—in other words, "most, if not all, legislation passed by the General Assembly." Similarly, in *Home Builders Ass'n,* 75 S.W.3d at 272, this Court held that a bill entitled "relating to property ownership" was overbroad because "it is hard to imagine any statute which would not have some arguable relation to ownership of either tangible or intangible property." In all other cases in which the bill's title "does not describe most, if not all, legislation enacted" or include nearly every activity the state undertakes, the Court has rejected arguments that a title was overinclusive. *See, e. g., Missouri State Med. Ass'n,* 39 S.W.3d at 841(no clear title violation in bill entitled "relating to health services"); *Corvera Abatement Tech. v. Air Conservation Comm'n,* 973 S.W.2d 851, 861–62 (Mo.

---

1. Last year, in *Rizzo v. State,* 189 S.W.3d 576, 581 (Mo. banc 2006), this Court denied a single subject challenge to H.B. 58, holding that its "core subject" is legislation "relating to political subdivisions."

banc 1998) (no violation in bill entitled "relating to environmental control").

As noted, the trial court's specific concerns were that the statutes contain differing definitions of the term "political subdivision," which render the term effectively meaningless and which necessitate a title that more clearly identifies the contents of the bills. This conclusion, however, disregards the above-stated principle that a bill's subject may be "clearly expressed by ... stating some broad umbrella category that includes all the topics within its cover." The term, "political subdivision" in the larger sense, is a broad umbrella category that includes all of the differing definitions of "political subdivisions" under its cover. Although the title here—"relating to political subdivisions"—may well represent the outer limit permitted, this Court holds that it is not so broad and amorphous as to constitute a violation.

The judgment is reversed.

All concur.