STATE of Missouri, Respondent,

v.

Robert SALTER, Appellant.

No. SC 88274.

Supreme Court of Missouri,
En Banc.

April 15, 2008.

Rehearing Denied May 20, 2008.

Irl B. Baris, St. Louis, for Appellant.

1. All further references are to RSMo 2000, unless otherwise indicated.

2. Defendant was charged with a class D felony because he previously pled guilty in 2002 to the misdemeanor offense of failing to provide workers' compensation insurance for another company with which he was involved.

3. The indictment charged Defendant with a violation of section 287.128.5 in that he was an employer under section 287.030.1, which defined **"employer"** as:

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel N. McPherson, Asst. Atty. Gen., Jefferson City, for Respondent.

MARY R. RUSSELL, Judge.

Robert Salter ("Defendant") appeals from his conviction for failure to insure workers' compensation liability under section 287.128.5, RSMo 2000,[1] which he contends is unconstitutional. Because this action involves the validity of a state statute, this Court has exclusive jurisdiction over this appeal. Mo. CONST. art. V, sec. 3. The judgment of the trial court is affirmed.

## I. Facts

Defendant, president of Housecalls, Inc. ("Corporation"), was charged with the class D felony of failure to insure workers' compensation liability under section 287.128.5.[2] Corporation had not carried insurance since February 2003, although it was required to do so as it had at least five employees in 2003 and 2004.

After trial by jury Defendant was found guilty, sentenced to one year of imprisonment, and fined $5,000. The court also imposed a penalty of $25,000 pursuant to section 287.128.5. He appeals.

## II. Constitutionality of Section 287.128

Defendant asserts the trial court erred in overruling his motion to dismiss his indictment in that the charges were based on his alleged failure to comply with section 287.128.5.[3] Section 287.128.5 states:

(1) Every person, partnership, association, corporation, limited liability partnership or company, trustee, receiver, the legal representatives of a deceased employer, and every other person, including any person or corporation operating a railroad and any public service corporation, using the service of another for pay;

. . . .

(3) Any of the above-defined employers must have five or more employees to be

Any employer failing to insure his liability pursuant to this chapter shall be guilty of a class A misdemeanor and, in addition, shall be liable to the state of Missouri for a penalty in an amount equal to twice the annual premium the employer would have paid had such employer been insured or twenty-five thousand dollars, whichever amount is greater. Any person who has previously pled guilty to or has been found guilty of violating any of the provisions of this section ... and who subsequently violates any of the provisions of this section ... shall be guilty of a class D felony.

Defendant argues that the statute violates article I, sections 10 and 11, and article III, section 23 of the Missouri constitution and the Fourteenth Amendment due process clause of the United States Constitution.

■■■ Pursuant to this Court's standard of review, laws enacted by the legislature and approved by the governor have a strong presumption of constitutionality. *Trout v. State*, 231 S.W.3d 140, 144 (Mo. banc 2007). Attacks against a statute's constitutionality based on procedural limitations are not favored. *Id.* The person challenging the validity of the statute has the burden of proving the act clearly and undoubtedly violates the constitutional limitations. *Id.*

Specifically, Defendant argues that section 287.128.5, as contained in enacting bills Senate Bill 251[4] and House Bills 1237, 1409, 1166, 1154, and 1491 (collectively "H.B. 1237"), is unconstitutional in that it violates article III, section 23 of the Missouri constitution.[5]

■■■ Article III, section 23 of the Missouri constitution states, "No bill shall contain more than one subject which shall be clearly expressed in its title...." This provision contains two distinct but related procedural requirements: a single subject rule and a clear title requirement. In deciding whether a bill contains more than one subject, the test is not whether individual provisions of the bill relate to each other, but whether the challenged provision (1) fairly relates to the subject described in the title of the bill, (2) has a natural connection to the subject, or (3) is a means to accomplish the law's purpose. *Trout,* 231 S.W.3d at 146. To determine a bill's subject, the Court looks first to the title of the bill. *C.C. Dillon Co.,* 12 S.W.3d at 329.

■■■ The purpose of the clear title requirement is to keep legislators and the public fairly apprised of the subject matter of pending laws. *Trout,* 231 S.W.3d at 144–45. This requirement is violated when the title is underinclusive or too broad and amorphous to be meaningful. *Jackson County Sports Complex Auth. v. State,* 226 S.W.3d 156, 161 (Mo. banc 2007). The only cases where this Court has found a title to be too broad and amorphous are those in which the title could describe the majority of all the legislation that the General Assembly passes. *Id.* "In all other cases in which the bill's title 'does not describe most, if not all, legislation enact-

deemed an employer for the purposes of this chapter....

4. Defendant's challenge to Senate Bill 251 is moot because later legislation in 1998 (House Bills 1237, 1409, 1166, 1154, and 1491) repealed section 287.128 and enacted a new version. *See C.C. Dillon Co. v. City of Eureka,* 12 S.W.3d 322, 325 (Mo. banc 2000).

5. Defendant also raised four additional constitutional objections to section 287.128.5. This Court need not address them as Defendant has presented no arguments or authority in support of these challenges. *See State v. Nicklasson,* 967 S.W.2d 596, 618 (Mo. banc 1998).

ed' or include nearly every activity the state undertakes, the Court has rejected arguments that a title was overinclusive." *Id.*

■ Defendant contends that the enactment of H.B. 1237, which was entitled "An Act to repeal [27 sections] relating to workers' compensation, and to enact in lieu thereof twenty-nine new sections relating to the same subject, with penalty provisions" was unconstitutional because it contained more than one subject. The bill set forth substantive provisions of the workers' compensation law, the means for enforcing that law, the penalties for noncompliance, and programs that further the purpose of the law.[6] The subject matter contained in H.B. 1237 fairly relates to its title. The contested bill does not contain more than one subject.

Defendant also takes issue with the title of the bill, arguing that it does not clearly express the subject contained therein. This Court has found that the following titles do not violate the clear title requirement: "relating to political subdivisions," *Id.* at 162; "general not for profit corporations," *State ex rel. St. John's Mercy Health Care v. Neill,* 95 S.W.3d 103, 106 (Mo. banc 2003); "relating to health services," *Mo. State Med. Ass'n v. Mo. Dept. of Health,* 39 S.W.3d 837, 841 (Mo. banc 2001); "relating to transportation," *C.C. Dillon Co.,* 12 S.W.3d at 329; and "relating to environmental control," *Corvera Abatement Tech., Inc. v. Air Conservation Comm'n,* 973 S.W.2d 851, 861–62 (Mo. banc 1998). The title "An Act to repeal [27 sections] relating to workers' compensation ..." is not so broad that it describes most of the legislation that the legislature enacts. The title contains one subject—workers' compensation. The title fully apprises the public and the legislature of the subject matter within the statute.

### III. Sufficiency of the Evidence

Defendant contends that the trial court erred in overruling his motions for judgment of acquittal and in entering judgment against him because there was insufficient evidence to support the judgment.

■ In reviewing the sufficiency of the evidence, appellate review is limited to determining whether there is enough evidence such that a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002). In applying this standard, this Court accepts all evidence favorable to the State as true, including all favorable inferences drawn from the evidence. *Id.* at 407. It will disregard all evidence and inferences to the contrary. *Id.* at 408.

■ Defendant sets forth two arguments to support his contention that there was insufficient evidence to support his conviction. First, he asserts that he is not an employer, and the State failed to prove that he had any personal duty to acquire workers' compensation insurance for the employees working at Corporation.

■ Individuals can be liable for corporate conduct. "A person is criminally liable for conduct constituting an offense which he performs or causes to be performed in the name of or in behalf of a corporation ... to the same extent as if such conduct were performed in his own

---

**6.** Most of the new sections created in H.B. 1237 amend chapter 287, RSMo, which is entitled "Workers' Compensation Law." The sections not amending chapter 287 also relate to workers' compensation as they establish scholarships for students whose parent was seriously injured or killed and was covered under workers' compensation and compensable under chapter 287.

name or behalf." Section 562.061. Under the workers' compensation laws, individuals are included in the definition of "employer." *See* section 287.030.1(1) (defining an "employer" as "[e]very person ... using the service of another for pay."). If Defendant had employed five or more people in his individual capacity, the failure to carry workers' compensation insurance would constitute an offense. *See* section 287.128.5. Thus, under section 562.061, Defendant is liable for Corporation's failure to provide insurance to its employees.

▉ Second, Defendant argues that the State failed to prove that he acted or engaged in any prohibited conduct in that the failure to provide workers' compensation insurance does not constitute "conduct." Criminal liability is based on conduct involving a voluntary act. Section 562.011.1. A "voluntary act" includes "[a]n omission to perform an act of which the actor is physically capable." Section 562.011.2(2). However, a "person is not guilty of an offense based solely upon an omission to perform an act unless the law defining the offense expressly so provides, or a duty to perform the omitted act is otherwise imposed by law." Section 562.011.4. It is clear that an employer's failure to insure his liability as set forth under the workers' compensation laws is an offense. *See* section 287.128.5.

▉ Defendant contends, however, that the word "conduct" as used in section 562.061 does not include a failure to act because the statute does not use the "omission to perform" language as contained in section 562.011. Defendant is essentially arguing that the meaning of the word "conduct" varies in the different sections of chapter 562. Such an argument goes against the rule that provisions in a legislative act are to be construed together, not read in isolation. *Bachtel v. Miller County Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. banc 2003). Additionally, if it is possible, the provisions should be "harmonized with each other." *Id.* Applying these principles, "conduct," as used in both sections 562.061 and 562.011, includes the failure to act, and further, Defendant, as an individual, can be liable for the failure to act as set forth by section 562.011.

Defendant fails to demonstrate that there was an insufficiency of the evidence to support the judgment against him. As Corporation's president, he admitted to an investigator that Corporation had not carried insurance since February 2003.[7] Additionally, Corporation's quarterly wage reports showed that it had five to six employees in 2003 and five employees in 2004. The trial court did not err in overruling Defendant's motions and in entering judgment, because there was sufficient evidence such that a reasonable juror could have found Defendant guilty beyond a reasonable doubt.

## IV. Denial of Defendant's Motion for Continuance

▉ Defendant argues that the trial court erred in denying his application for continuance of trial filed on the day of trial. He alleges that he planned to call Joel Kamil as a witness, but he was unavailable. Kamil, who was a CPA, was to testify that Uchechi Brown, Corporation's secretary, was an independent contractor and not an employee. Defendant contended this testimony was essential to his case. At a pre-trial hearing that same day, defense counsel indicated that he had spoken

---

7. Defendant never contests that he was not the responsible person to procure such insurance.

to Kamil three days prior about his testimony and his availability as a witness and learned that Kamil would be out of town on the day of the trial. In response, the trial court found that Kamil had not been endorsed as a witness and that the case had been pending for 20 months. The court also noted that defense counsel had not mentioned Kamil during a hearing that was conducted the previous Thursday. Based on the forgoing, the trial court denied Defendant's request as untimely.

Defendant contends that Kamil would have presented evidence that was crucial to the case, his request for continuance was done in accordance with the rules, he presented sufficient reasons for continuing the trial, and the State did not show that their case would be prejudiced by a continuance.

 The decision to grant a continuance is within the sound discretion of the trial court. *State v. Christeson*, 50 S.W.3d 251, 261 (Mo. banc 2001). Reversal is not warranted unless there is a very strong showing that there was an abuse of discretion resulting in prejudice. *Id.* Under Rule 24.10, an application for continuance due to the absence of a witness must show: (1) the materiality of the evidence sought to be obtained and due diligence on the part of the applicant to obtain the witness; (2) the name and residence of the witness; (3) the facts that the witness will prove and that there is no other person who could have been present at trial to testify to such facts; and (4) the application was made in good faith for the purpose of obtaining a fair and impartial trial. In deciding whether to grant a continuance, the trial court is entitled to consider whether the application meets the requirements of this rule. *State v. McGinnis*, 622

S.W.2d 416, 420 (Mo.App.1981). Additionally, when a trial court concludes that a defendant did not make every effort to secure the attendance of a witness that he claims is indispensable, the court's decision to deny a request for continuance is within its discretion. *State v. Murry*, 580 S.W.2d 555, 557–58 (Mo.App.1979).

Defendant's application did not meet the first requirement under Rule 24.10. Whether or not Brown was an independent contractor was not a material issue, because based on the duties she performed as Corporation's secretary, she is considered an employee under the workers' compensation laws.[8] Furthermore, Defendant did not act with due diligence in his efforts to obtain Kamil. His case had been pending for 20 months, and the trial date had been set for about 40 days, but he waited until three days before the trial to contact Kamil. As his application was not in compliance with Rule 24.10, and he failed to use due diligence to obtain Kamil as a witness, the denial of Defendant's request for continuance was not an abuse of discretion.

## V. Impeachment of Defendant with Prior Convictions

 Prior to trial, Defendant filed a motion in limine requesting that the trial court bar the State from cross-examining him about the nature of his past conviction for failing to carry workers' compensation insurance for another company with which he was involved. The court denied his request, and he decided not to testify at trial. Defendant now argues that the trial court erred in refusing to prevent the State from cross-examining him about the nature of his prior conviction. He asserts

---

**8.** An employee is defined as "every person in the service of any employer ... under any contract of hire, express or implied, oral or written, or under any appointment or election, including executive officers of corporations." Section 287.020.1.

that the prejudicial impact of this prior conviction of a similar offense outweighed any probative value there may have been.

■ Since Defendant did not take the stand and no attempt was made to impeach him, the decision to overrule his motion in limine is not properly before this Court. *State v. Foster*, 684 S.W.2d 597, 598 (Mo.App.1985). As a result, he is only entitled to plain error review, which requires this Court to find that manifest injustice or miscarriage of justice has resulted from the trial court error. Rule 30.20; *State v. Middleton*, 995 S.W.2d 443, 452 (Mo. banc 1999).

Defendant was not subject to impeachment because he did not testify. Though he contends that the trial court, in effect, denied his right to testify, this argument is unpersuasive. *See State v. Toliver*, 544 S.W.2d 565, 568–69 (Mo. banc 1976). Defendant's allegations do not demonstrate manifest injustice or miscarriage of justice that merit plain error relief.

## VI. Giving and Refusal of Instructions

■ Defendant argues that the trial court erred in giving the State's offered Instructions 5, a verdict-director, and 6, a converse, and in refusing to give his proffered Instructions A, B, C, and D, which asked the jury to make a determination of independent contractor status. Though Defendant's point relied on is improperly drafted in that it contains multiple unrelated issues, this Court will still review his claims for plain error. *See Helmig v. State*, 42 S.W.3d 658, 666 n. 1 (Mo.App. 2001). Plain error is found when the alleged error "facially establish[es] substantial grounds for believing a manifest injustice or miscarriage of justice occurred."

*State v. Baker*, 103 S.W.3d 711, 723 (Mo. banc 2003) (alternation in original). To demonstrate that an instructional error constitutes plain error, Defendant must show that the trial court "so misdirected or failed to instruct the jury" that the error affected the jury's verdict. *Id.*

Defendant's first allegation of error is that State's Instruction 5 was erroneous because it used the word "conduct." He contends there was no evidence that he engaged in "conduct" since the charge against him involved the failure to act. As more fully explained above, Defendant's failure to act did constitute "conduct." The use of the word "conduct" was proper, and the trial court did not error in submitting this instruction.

Defendant's next allegation of error is that State's Instruction 6 was erroneous because it was premised on him causing Corporation to fail to carry workers' compensation insurance when there was no proof of any "conduct" for which he could be held criminally liable.[9] As explained previously, there was "conduct" for which he could be held criminally liable. The trial court did not misdirect the jury in giving Instruction 6, and there was no plain error.

Defendant's final allegation of error is that Instructions A, B, C, and D, which were refused by the court, should have been given to the jury. He contends that the instructions were proper in that they were based upon evidence that Brown was not an employee for Corporation, but instead was an independent contractor. As discussed above, whether or not Brown was an independent contractor was not a material issue because, based on the duties she performed as Corporation's secretary, she is considered an employee under the

---

9. Defendant did not include any claim of error relating to Instruction 6 in his motion for new trial and is only entitled to plain error review.

workers' compensation laws. It is irrelevant if she contracted with Corporation to do other work. Since this issue was not material, the trial court was under no duty to instruct on the matter. *See State v. Flenoid,* 838 S.W.2d 462, 469–70 (Mo.App. 1992) (finding that the trial court had no duty to instruct the jury on the exception to the crime of unlawful use of a weapon because there was no evidence that the defendant was within the exception). The trial court did not err in refusing Defendant's instructions.

None of Defendant's claims of error merit reversal in that Defendant failed to show that the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict.

## VII. Allocation of *Brady* Violation

■ Defense counsel unsuccessfully attempted to discover a 2003 annual registration report that was in the attorney general's possession from a separate prosecution of Defendant. The prosecutor asked defense witness Brown at trial why her address, as listed in Corporation's records, was identical to Defendant's address. Defense counsel objected to this question, arguing that the two had not lived together.

Defendant alleges that the 2003 report contained Brown's correct address and would have contradicted the State's attempt to impeach her. Defendant argues that the trial court erred in not taking remedial action against the State for failing to produce the report. He also claims the State's failure to produce this evidence violated the *Brady* rule of disclosure.

■ Under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), due process is violated when the prosecutor suppresses evidence that is favorable to the defendant and material to either guilt or punishment. *Anderson v.*

*State,* 196 S.W.3d 28, 36 (Mo. banc 2006). Evidence is material only when there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. *Id.* at 36–37. *Brady,* however, only applies in situations where the defense discovers information after trial that had been known to the prosecution at trial. *State v. Myers,* 997 S.W.2d 26, 33 (Mo.App. 1999). If the defendant had knowledge of the evidence at the time of trial, the State cannot be faulted for nondisclosure. *Id.*

The 2003 annual registration report is not the type of evidence to which *Brady* applies. At the time of his trial, Defendant was already aware that the report existed. Additionally, the report was not material to Defendant's case. Defendant contends that the report would have contradicted the State's attempt to impeach Brown. This Court, however, found in *State v. Brooks,* 960 S.W.2d 479, 495 (Mo. banc 1997), that prison records, which would only have been used to rebut the State's impeachment, were not likely to change the outcome of the case since there was other evidence that supported the jury's decision.

There was sufficient additional evidence to support the jury's verdict in this case. Defendant did not dispute the fact that he did not procure workers' compensation insurance for Corporation's employees, and corporate records verified that it employed at least five persons in each year. Considering the report may only have served to rebut Brown's impeachment, there is no reasonable probability that the outcome of Defendant's trial would have been different. The State did not violate the *Brady* rule of disclosure, and the trial court did not err in refusing to take remedial action against the State.

## VIII. Conclusion

The judgment of the trial court is affirmed.

All concur.