

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Respondent,         )
                                      )
v.                                    )    No. SD36076
                                      )    Filed:  July 8, 2020
MATTHEW CURTIS TABER,                 )
                                      )
    Defendant-Appellant.          )

### APPEAL FROM THE CIRCUIT COURT OF OZARK COUNTY

Honorable Elizabeth A. Bock, Special Judge

**<u>AFFIRMED</u>**

Following a jury trial, Matthew Taber (Defendant) was convicted, as a prior offender, of first-degree assault and first-degree trespassing.  *See* § 565.050; § 569.140.[1]  Before sentencing, defense counsel filed a motion to determine whether Defendant was competent to proceed.  At a hearing on the motion, a competency hearing was scheduled for three months later.  At the competency hearing, however, the defense expert witness was not available to testify.  Defense counsel requested a continuance.  The trial court denied the

---

[1]  All statutory references are to RSMo (2000) unless otherwise specified.  All rule references are to Missouri Court Rules (2020).

request and, after hearing the evidence presented, decided that Defendant was competent to proceed to sentencing.

Presenting one point on appeal, Defendant contends the trial court abused its discretion in denying Defendant's request for continuance at his post-trial competency hearing. Finding no abuse of discretion, we affirm.

"In our review of the facts, we are to view them in the light most favorable to the trial court's ruling challenged on appeal, deferring to the trial court's superior opportunity to determine the credibility of witnesses." *State v. Williams*, 134 S.W.3d 766, 772 (Mo. App. 2004) (citation omitted). The following summary of facts has been prepared in accordance with these principles.

Defendant was originally charged with three counts. Count 1 charged the class A felony of assault in the first degree. It alleged that Defendant "knowingly caused serious physical injury" to Edward Dossett, Jr. (Victim) "by beating him repeatedly with his hands and fists." Count 2 charged the class C felony of burglary in the second degree. It alleged that Defendant "knowingly entered unlawfully into an inhabitable structure" owned by Victim, "for the purpose of committing the crime of stealing therein." Count 3 charged the class A misdemeanor of stealing. It alleged that Defendant "appropriated pizza and beer," which was owned by Victim, without his consent and with the purpose to deprive him thereof. The beating mentioned in Count 1 was alleged to have occurred on or about November 16, 2013. The burglary of Victim's residence and the stealing of his food mentioned in Counts 2 and 3 were alleged to have occurred on November 17, 2013. Defendant was charged as a prior offender. The trial court – assigned in 2014 and continuing throughout the case – found that Defendant was a prior offender before the first of his two trials.

In July 2015, Defendant's first trial resulted in a mistrial before the jury was seated due to Defendant's visible intoxication. The trial court noted that Defendant had "made himself unavailable for trial" when "he got kind of nervous and sat out in his car and probably drank a pint of something[,]" causing himself to become intoxicated. Trial counsel later claimed that Defendant was "self-medicating with alcohol because of … his delusions[.]"

Thereafter, defense counsel raised concerns about Defendant's competency to proceed to trial. The trial court ordered that Defendant undergo a competency evaluation by the Department of Mental Health (DMH). Dr. Bridget Graham, a DMH forensic examiner, conducted the evaluation. In her opinion, Defendant suffered from a mental disease or defect that rendered him unable to assist his attorney in his own defense. Dr. Graham opined that Defendant: (1) "holds the persecutory delusion that an underground bunker is beneath his RV on his [parents'] farm"; (2) believes "that individuals in his community, including the alleged victim's family, his defense attorney, the prosecutor and judge are all conspiring against him"; and (3) is convinced "that his current charges are the result of this conspiracy[.]" Further, "[w]hen asked how he could be defended against the charges, … it appears that [Defendant] plans to put forth a defense rooted in delusion." Based on the results of Dr. Graham's evaluation and the parties' stipulation, the trial court decided in October 2015 that Defendant was incompetent to proceed to trial. He was committed to the custody of DMH.

In May 2016, DMH filed a motion to proceed to trial. The motion stated that, based on the opinion of a DMH examiner, Defendant was no longer incapable of understanding the proceedings against him or assisting in his own defense. According to the DMH examiner: (1) "[a]s compared to [Defendant's] initial competency evaluation, his

3

understanding of the charges against him was realistic and not rooted in delusion"; and (2) Defendant "repeatedly noted that his beliefs related to the supposed group of people living underneath the family farm is not related to his current defense strategy and is irrelevant at this time." Based on DMH's motion and report, the trial court decided that Defendant was competent to proceed to trial and sustained the motion to proceed.

Defendant's second jury trial took place January 9-10, 2017. After the State had rested its case, the trial court discussed Defendant's right to testify. Defense counsel announced that he anticipated Defendant would be testifying. The trial court informed Defendant, among other things, that no one could force Defendant to testify or prevent him from testifying. The court also informed Defendant that, by testifying, he would be subject to cross-examination. Defendant acknowledged his understanding of his right to testify and the potential consequences, and he confirmed that it was his intention to testify. The trial court also noted that Defendant could always change his mind at the last minute and decide that he did not want to testify.

After the first of two defense witnesses testified, defense counsel asked the court for a moment to talk with Defendant about "possible testimony." The court recessed for approximately 20 minutes. Thereafter, the trial court asked if there were "any issues" that they needed to "take up on the record" before the jury was brought in, and defense counsel stated: "No, not from us." Defendant did not testify. The jury found Defendant guilty as charged on Count 1, guilty of the lesser-included offense of first-degree trespassing on Count 2, and not guilty on Count 3. The matter was set for sentencing.

Defendant's motion for a new trial included a claim that he was denied a fair trial because he had lacked the capacity to assist in his own defense and that he was incompetent at the time of trial. The motion alleged that: (1) the defense had prepared for trial with the

4

understanding that Defendant would testify, but he then refused to testify during the trial; (2) post-trial discussions between Defendant and trial counsel caused counsel to believe that "Defendant's diagnosed mental health problems with delusions and paranoia … had led to Defendant's pullback from testifying at trial"; (3) Defendant was evaluated by defense expert clinical psychologist, Dr. Kent Franks, on January 27, 2017; and (4) Dr. Franks had concluded that Defendant was not competent during the trial because his delusional disorder had influenced his view of the trial and his ability to testify. Defense counsel also filed a notice of competency issue pursuant to § 552.020 RSMo Cum. Supp. (2014). This notice alleged that Defendant had lacked competence at the trial and that he was incompetent to proceed.[2]

In March 2017, based on defense counsel's request and Dr. Franks' report, the trial court ordered that Defendant undergo another evaluation by DMH to determine whether he had been competent at trial and whether he was competent to proceed. The trial court noted, however, that "[n]othing at the trial, that [the court] saw, indicated that [Defendant] was not competent[,]" that he "interacted with his attorneys" and that Defendant made statements in

---

[2] Section 552.020 states that "[n]o person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." § 552.020.1. "If the court determines that the accused lacks mental fitness to proceed, the criminal proceedings shall be suspended and the court shall commit him to the director of the department of mental health." § 552.020.9. The accused is then subject to a review of his competency after six months, and a report of the examination must be filed with the court. § 552.020.11(1). Either party is entitled to an order granting an examination of the accused and, following that examination, a report must be filed with the court. § 552.020.11(2). If either party contests the fitness to proceed or contests the findings, the court must hold a hearing on the issue. § 552.020.11(3). "The report or reports may be received in evidence at any hearing on the issue but the party contesting any opinion therein relative to fitness to proceed shall have the right to summon and to cross-examine the examiner who rendered such opinion and to offer evidence upon the issue[.]" § 552.020.11(3). "If the accused is found mentally fit to proceed, the criminal proceedings shall be resumed[.]" § 552.020.11(4).

the sentencing assessment report, which was conducted after Dr. Franks' evaluation, that were "completely logical, consistent with the evidence that was presented at trial, and totally consistent with his defense of self-defense[.]"

The trial court also raised the possibility that the defense had "sandbagged," in that the defense had failed to communicate any concern about Defendant's competence during the trial, and that "this is the situation where it's ripe for manufacturing grounds to set aside a conviction." Defense counsel responded that Defendant's "delusions that there was … an underground tunnel system that he was aware of and that this prosecution was connected to that never stopped[,]" but that counsel "genuinely believed that [Defendant] was still going to be able to testify because that wasn't really relevant to this case[.]" The trial court replied that defendants "get cold feet all the time at trial." Defense counsel agreed and said, "that's why I didn't raise it then. But discussing it with him afterwards, I came to believe that … his not testifying was connected to his fear of this being brought up…. [I]n his mind, it became connected, and that's what prevented him from testifying[.]"

In August 2017, DMH filed a report in which its examiner, Dr. Bridget Graham, concluded that Defendant had been competent at trial, but that he was not competent to proceed to sentencing. Defense counsel responded by filing a challenge to Dr. Graham's opinions.

In October 2017, a competency hearing was held. The trial court agreed to hear evidence about Defendant's competency at trial, but the record would be left open with no final determination until Defendant was competent and could participate in the hearing on the motion for a new trial. Dr. Graham and defense expert Dr. Franks then testified about Defendant's competency, both during the trial and as of the date of the hearing. While each

expert differed in their opinion that Defendant was competent during trial, both agreed he was not competent to proceed to sentencing.

As mentioned previously, Dr. Franks examined Defendant 17 days after the January 2017 trial. According to Dr. Franks, Defendant told him about the series of tunnels under his family's property and the conspiracy to keep it hidden. Defendant became a target once he found out about the conspiracy and described himself as a "whistle blower." Defendant said there was a "strong possibility" his knowledge of this conspiracy led to his arrest, and Victim was selected to frame him for the assault. Dr. Franks diagnosed Defendant with "delusional disorder, persecutory type [and] an alcohol abuse disorder." Dr. Franks opined that Defendant had a "really severe head injury" in 2008 and the delusions started to develop after that. Dr. Franks opined that Defendant was delusional at trial, noting that "his condition is deteriorating." According to Dr. Franks, Defendant said that: (1) he and a defense witness were going to testify that Defendant had acted in self-defense; and (2) Defendant chose not to testify because "he froze up" and "he couldn't do it, he couldn't talk, he just froze with anxiety[.]"

Dr. Graham, a licensed psychologist and certified forensic examiner for DMH, testified that she examined Defendant in mid-May and late June 2017. Dr. Graham agreed that Defendant had a "long history" of "persecutory delusional beliefs." Dr. Graham explained, however, that "someone can hold delusional beliefs and still be competent to proceed" because it is "how those delusional beliefs impact their case" that matters. According to Dr. Graham, Defendant had been found competent to proceed to trial because, despite his delusional beliefs, he had demonstrated the capacity to work with his attorney in a rational manner by understanding that his delusional beliefs would not be admissible and by moving forward with a defense of self-defense. There was no information of which she

7

was aware to indicate that Defendant's condition had deteriorated to the point that he was no longer competent to assist in his defense at trial in January 2017. Regarding Defendant's decision not to testify, he told Dr. Graham (just like Defendant had told Dr. Franks) that "he froze, he became very anxious, and [he] just was unable to take the stand in his defense." Dr. Graham described those statements as a "very rational response to testifying." Dr. Graham also opined there were no statements by Defendant "that his anxiety was in any way related to his persecutory delusional beliefs[,]" and Defendant "did not attribute … his choices, his decisions, even the outcome to his persecutory delusional beliefs." In Dr. Graham's opinion, Defendant was not competent to proceed as of the date of the evidentiary hearing. Dr. Graham believed that Defendant's conviction had "activated" his paranoia and persecutory delusional beliefs. In contrast to his rational view of the trial, when asked what he thought would happen at the sentencing hearing, Defendant became far more concerned about his delusional beliefs and "exposing this conspiracy[.]"

At the close of the October 2017 hearing, the trial court decided that Defendant was not competent to proceed to sentencing and committed him to the custody of DMH. The trial court again stated that the issue of whether Defendant was competent at trial would be kept open until Defendant was competent and a hearing on his motion for a new trial could be held.

In early July 2018, DMH filed a motion to proceed to sentencing, based on a DMH examiner's opinion that Defendant no longer lacked the capacity to understand the proceedings against him or to assist in his own defense. Defense counsel responded by filing a request for a second examination. The trial court sustained that request on July 16, 2018. The court ordered that Defendant be evaluated by a qualified psychologist of his own choosing and that a report be filed by September 14, 2018. On November 19, 2018, the trial

8

court ordered the defense "to file psych evaluation [within] 15 days as report is long overdue."

At a December 10, 2018 hearing attended by defense counsel and the prosecutor, the trial court scheduled a competency hearing for March 18, 2019. On February 7, 2019, defense counsel filed a mental competency evaluation report by Dr. Michael Walsh.

At the March 18th competency hearing, Defendant was represented by defense counsel John Zimmerman (Zimmerman). The trial court asked Zimmerman if he was ready to proceed. Zimmerman told the court that Defendant's expert witness, Dr. Walsh, was not present. Zimmerman said it was "not clear to [him] that it was clearly communicated to [Dr. Walsh] that he had to be here this date" and Dr. Walsh had not been subpoenaed. The prosecutor told the court that it was his understanding Dr. Walsh was going to be at the hearing. Zimmerman admitted that "this is very much on [him]," that he had not attempted to contact Dr. Walsh until the Thursday before the Monday hearing, and that he might not have been clear enough to his legal assistant about ensuring Dr. Walsh's presence at the hearing. Zimmerman also admitted that he had not tried to reach Dr. Walsh over the weekend. The trial court took a short recess so that Zimmerman could again try to contact Dr. Walsh. Zimmerman reported that the receptionist at Dr. Walsh's office said Dr. Walsh was not on the schedule for that week.

The trial court stated that "this [hearing] has been set since December" and that the court was "not happy with the situation[.]" The court ruled that, "[s]ince [Dr. Walsh] is not present and with the understanding that [the defense was] going to have him present today for the State to cross-examine," the court would not admit Dr. Walsh's report into evidence.

Thereafter, Zimmerman asked for a continuance to "get Dr. Walsh here" so that they could admit his report. Zimmerman stated that "it's a detailed report with new information

related to a head injury that I don't think the Court has … seen before." The trial court then asked for the State's response. The prosecutor objected, stating that "[t]his case has been set for three months" and "[t]here's no reason why … Defendant could not get his witness here." In addition, the prosecutor stated that he had read Dr. Walsh's report and was prepared with his witness for the hearing. The trial court had also read the report and recognized Defendant's right to this second evaluation. The court further acknowledged its awareness of the previous evaluations on the issue by Dr. Franks and Dr. Graham. Ultimately, the court denied the request for a continuance "because this hearing has been set for over three months, and the State did have their witness here from Fulton today." The court went on to hear testimony from the DMH expert and Zimmerman.

Dr. Randy Telander, a forensic examiner, testified on behalf of DMH. After reviewing the records, including Defendant's records from Fulton State Hospital, Dr. Telander attempted to interview Defendant for the evaluation. Defendant repeatedly declined to speak with Dr. Telander, stating that Defendant "didn't think it would be in his best interest" and that "it turns out for the worst." Defendant had previously indicated that he was aware that the sentencing assessment report had recommended a sentence of 15 years' imprisonment, and Defendant had told others at the hospital numerous times that he preferred to stay at Fulton State Hospital rather than be sentenced. Dr. Telander relied on the same information as Dr. Graham had, but disagreed with Dr. Graham's opinion that Defendant was not competent to proceed to sentencing. Dr. Telander confirmed that, since Dr. Graham's previous report, Defendant had undergone months of competency restoration in DMH. Dr. Telander opined that: (1) Defendant was competent to proceed, both because he understood the legal process going forward and because he was able to assist his attorney; (2) Defendant's delusions would not prohibit him from assisting in further proceedings

10

because the fact that he had indicated a preference for being ruled incompetent rather than being sentenced "shows his ability to reason and understand what's happening realistically at this point."

Zimmerman, who had been one of Defendant's attorneys since 2016, also testified at the hearing about his observations relating to Defendant's competency. According to Zimmerman, their defense had been based upon Defendant testifying. Zimmerman spent a lot of time with Defendant before trial in witness preparation. After coming back into the courtroom and being confronted with the jurors, Defendant changed his mind and told Zimmerman, "I'm just not going to testify. I'm going to rely on the presumption of innocence." With respect to sentencing, Zimmerman testified that Defendant believed he was being persecuted as a whistle blower so it was difficult for him to cooperate. Zimmerman admitted that Defendant: (1) did not make any references to the underground tunnel system in his statements for the sentencing assessment report; (2) made several statements that were consistent with a defense witness' testimony supporting self-defense that had been presented at trial; and (3) also expressed to Zimmerman Defendant's desire to remain in DMH, rather than go to prison. The trial court found that, "based on the most credible evidence presented in the competency hearings," Defendant was competent to proceed. The trial court also found that Defendant was competent at the time of trial based on the "extensive record on this case."

In April 2019, the court sentenced Defendant to 15 years' imprisonment for Count 1, with $10,000 in restitution to be paid to Victim, and 60 days' incarceration for Count 2. This appeal followed.

Defendant's single point on appeal challenges the trial court's decision to deny Defendant's request for a continuance at his post-trial competency hearing. The decision

11

whether to grant or deny a continuance "is within the sound discretion of the trial court." *State v. Edwards*, 116 S.W.3d 511, 535 (Mo. banc 2003). "An abuse of discretion occurs when a trial court's decision is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Harding*, 528 S.W.3d 362, 376 (Mo. App. 2017).

Pursuant to Rule 24.10(a), an application for continuance due to the absence of a witness must show, *inter alia*, "the materiality of the evidence sought to be obtained and due diligence upon the part of the applicant to obtain the witness[.]" *Id.* "[W]hen a trial court concludes that a defendant did not make every effort to secure the attendance of a witness that he claims is indispensable, the court's decision to deny a request for continuance is within its discretion." *State v. Salter*, 250 S.W.3d 705, 712 (Mo. banc 2008). "Reversal is warranted only upon a very strong showing that the court abused its discretion and prejudice resulted." *Edwards*, 116 S.W.3d at 535. The party requesting the continuance bears the burden of showing prejudice. *State v. Jones*, 479 S.W.3d 100, 111 (Mo. banc 2016); *Harding*, 528 S.W.3d at 376. "[T]he refusal to grant a continuance for a missing witness will not be reversed on appeal unless the witness' testimony would probably result in a different outcome." *State v. Dodd*, 10 S.W.3d 546, 554-55 (Mo. App. 1999); *State v. Patton*, 84 S.W.3d 554, 556 (Mo. App. 2002); *see, e.g.*, *State v. Artis*, 215 S.W.3d 327, 337 (Mo. App. 2007).

Defendant contends the trial court abused its discretion in denying Defendant's request for a continuance because Zimmerman made a showing that Dr. Walsh "was material in that [Dr. Walsh's] competency report and testimony went to the fact that [Defendant] was not competent to proceed and was not competent at trial, which was a critical and contested issue at the hearing[.]" According to Defendant, "the defense had made reasonable efforts"

12

to contact Dr. Walsh and Defendant was prejudiced because Dr. Walsh's competency report "was the only evidence establishing [Defendant] was not competent at a contested competency hearing." We disagree with these arguments for two reasons.

First, Defendant did not establish that he had exercised due diligence in ensuring that Dr. Walsh would be present at the hearing. *See* Rule 24.10(a); *Salter*, 250 S.W.3d at 712. "Inadequate preparation does not justify a continuance where counsel had ample opportunity to prepare." *State v. Middleton*, 995 S.W.2d 443, 465 (Mo. banc 1999). Here, attorney Zimmerman had ample opportunity and yet failed to diligently act to ensure that Dr. Walsh would be present for the competency hearing. The trial court noted that the competency hearing had been set since December 10, 2018, giving the defense more than three months to secure Dr. Walsh's attendance for the hearing on March 18, 2019. In addition, Zimmerman admitted that Dr. Walsh's absence was "very much on [Zimmerman.]" During the competency hearing, he stated that: (1) he had not attempted to contact Dr. Walsh until the Thursday before the Monday hearing; (2) he had not tried to reach Dr. Walsh over the intervening weekend; and (3) Zimmerman had not obtained a subpoena for Dr. Walsh. Thus, by Zimmerman's own admission, he did not make every effort to secure Dr. Walsh's attendance at the competency hearing. *See Salter*, 250 S.W.3d at 712 (holding that the trial court did not abuse its discretion in denying a continuance because the defense had failed to use due diligence in obtaining the presence of an absent witness when the trial date had been set for 40 days and the defense had waited until 3 days before trial to contact the witness, who was then allegedly unavailable on the trial date).

In support of Defendant's argument, he cites three cases in which a witness' absence due to unforeseen circumstances did not demonstrate a lack of due diligence by defense counsel. *See State v. Litherland*, 477 S.W.3d 156, 163-65 (Mo. App. 2015) (holding that

13

the trial court abused its discretion in denying a continuance when the defense's sole witness was temporarily unavailable due to having gone into labor early that morning); ***State v. Blocker***, 133 S.W.3d 502, 503-05 (Mo. banc 2004) (holding that the trial court erred in denying a continuance when the defense's witness, who was under subpoena, was temporarily unavailable due to a family medical emergency); ***State v. Brown***, 517 S.W.3d 617, 630-31 (Mo. App. 2017) (holding that the trial court abused its discretion in denying a continuance because defense counsel did not have ample opportunity to prepare for trial and reasonably required more time). These factually distinguishable cases do not support Defendant's argument.

Second, Defendant has not met his burden of showing that he was prejudiced by the trial court's denial of a continuance. In Defendant's point, he did not contend that Dr. Walsh's testimony would have changed the outcome of the hearing. Instead, Defendant contended that he was prejudiced by the court's denial of his continuance request because Dr. Walsh's competency report "was the only evidence establishing [Defendant] was not competent" at the competency hearing. That contention lacks merit because Dr. Walsh's competency report was not the "only evidence" that Defendant was not competent to proceed to sentencing. Although Dr. Walsh's report was not admitted in evidence, the trial court noted similar opinions expressed by Dr. Franks and Dr. Graham.[3] It was Dr. Telander's opinion (reached after Defendant had been committed to DMH for several months) that the

---

[3] In Defendant's reply brief, he argues that the individual opinions of Drs. Graham and Franks are different than that of Dr. Walsh. According to Defendant, "Dr. Walsh's report discusses in great detail that [Defendant's] mental health issues were actually triggered far earlier when he suffered a significant head injury[.] Dr. Graham rejected the idea that [Defendant's] competency issues were caused by this head injury[,]" but instead opined that they were "activated" by his conviction. Defendant's argument ignores Dr. Frank's opinion that Defendant's mental health issues were likely caused by a "really severe head injury[.]" Dr. Franks further opined that Defendant's condition was deteriorating.

14

trial court found most persuasive. Dr. Telander opined that Defendant was competent to proceed. Dr. Telander based his opinion, in part, on Defendant's repeated statements during his DMH commitment that he preferred to be ruled incompetent, rather than be sentenced to imprisonment. According to Dr. Telander, that demonstrated Defendant's "ability to reason and understand what's happening realistically at this point." Zimmerman likewise admitted that Defendant had expressed to him his desire to remain in DMH, rather than go to prison. The trial court's factual finding that Defendant was competent to proceed to sentencing, "based on the most credible evidence presented in the competency hearings," shows that the court credited Dr. Telander's testimony regarding Defendant's competency. Therefore, Defendant has failed to persuade us that the admission of Dr. Walsh's testimony probably would have changed the outcome of the competency hearing. *See* **Patton**, 84 S.W.3d at 556.

Given the extensive record on the underlying issue and the trial court's tenure with the case since 2014, we cannot conclude the court's decision to deny Defendant's motion for continuance was "clearly against the logic of the circumstances then before it" nor was it "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." **Harding**, 528 S.W.3d at 376-77. Finding no abuse of discretion, Defendant's point is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, C.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR

15